**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HENRY J. HUFFMAN**                          **CIVIL ACTION**

**VERSUS**                                    **CASE NO. 12-1061**

**TURNER INDUSTRIES GROUP, L.L.C.**           **SECTION: "G"(2)**

## ORDER AND REASONS

Before the Court is Defendant Turner Industries Group, L.L.C.'s ("Turner" or "Defendant") Motion for Summary Judgment, or, Alternatively, Partial Summary Judgment,[1] wherein Turner requests the entry of summary judgment against Plaintiff Henry J. Huffman ("Plaintiff") because (1) he failed to exhaust his administrative remedies with respect to certain claims; (2) he cannot establish a *prima facie* case of discrimination under the Americans with Disabilities Act ("ADA"); and (3) even if Plaintiff could establish a *prima facie* case of discrimination, Turner's policy is justified by business necessity.   Having considered the motion, the memorandum in support, the response, the reply, the record, and the applicable law, the Court will deny the motion.

## I.  Background

### A.  Procedural Background

Plaintiff filed a complaint in the Eastern District of Louisiana on April 26, 2012, and invoked this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 for alleged violations of the ADA, 42 U.S.C. § 12101 *et seq.*[2]  On December 18, 2012, Turner filed the instant Motion for Summary

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 1.  An amended complaint was subsequently filed by Plaintiff demanding a jury trial.  Rec. Doc. 17.

Judgment, or, Alternatively, Partial Summary Judgment,[3] to which Plaintiff responded on January 4, 2013 after the Court granted Plaintiff an extension of time.[4]  Turner filed a reply to the instant motion on January 16, 2013, with leave of court.[5]

## B.  Factual Background

In 1986, Plaintiff lost part of his left hand in a welding accident.  The injury has caused Plaintiff chronic pain and related anxiety, which has been treated with hydrocodone, a narcotic pain medication, and Xanax, a benzodiazepine.[6]  Between 2005 and 2011, Turner intermittently hired Plaintiff on a number of occasions to perform work as a welder at various industrial facilities owned by Turner's clients.[7]

In 2007, some of Turner's employees were involved in industrial accidents at client job sites that were allegedly attributable to work-time use of narcotic pain medication by employees working in safety-sensitive positions.  According to Turner, this was the impetus for the adoption of Turner's Drug, Alcohol, and Contraband Policy (the "policy") in its present form.[8]  As of 2007, the policy requires that "employees who work in safety-sensitive positions, such as that of a welder, not take narcotic pain medications or benzodiazepines during working hours or within eight hours of

---

[3] Rec. Doc. 31.

[4] Rec. Doc. 48.

[5] Rec. Doc. 66.

[6] Rec. Doc. 31-1 at pp. 2, 5-6; Rec. Doc. 46 at p. 2.

[7] Rec. Doc. 31-1 at pp. 2, 4; Rec. Doc. 46 at p. 2.  Turner serves clients in the petrochemical, refining, energy, power generation, pulp and paper, and related industries.  Nearly every site presents safety-hazards including hazardous chemicals, moving equipment, and hazardous gasses.  Rec. Doc. 31-1 at p. 2.

[8] Rec. Doc. 31-1 at pp. 2-3 (citing Affidavit of Michael Phelps, Turner's Vice President of Health, Safety and Environmental, Ex. 3 ¶¶ 4-7).

reporting to work."[9]

On September 16, 2011, Plaintiff was offered conditional employment by Turner, provided he pass a re-employment physical examination and drug screen– a routine part of Turner's hiring process.  During this process, applicants complete a "Second Injury Fund" ("SIF") questionnaire, which is reviewed by a physician's assistant ("PA") contracted by Turner.  After reviewing an applicant's responses, the PA asks the applicant whether he is taking any medications, documents the responses on the SIF form, and conducts a physical examination.  If the PA discovers an issue, the applicant is placed on "medical hold" and asked to visit his physician to obtain a medical release.[10]

Plaintiff had previously undergone this re-employment process a number of times throughout his tenure with Turner, most of which were conducted at Turner's Sulphur, Louisiana facility by Dan Crook, a contracted PA, and Paul Maddox, Turner's Senior Medic.  During these previous examinations, Plaintiff repeatedly communicated to Mr. Crook that he was not taking medication or that he was only taking Xanax or hydrocodone on rare occasions while off-duty, in compliance with the policy.[11]  However, on September 16, 2011, Plaintiff informed Mr. Crook for the first time that he took Xanax twice daily and hydrocodone three to four times daily.[12]  Mr. Crook instructed Plaintiff that his use of this medication violated Turner's policy and he would need to obtain a medical release from a physician stating that he could comply with Turner's policy.  Mr. Crook also

---

[9] *Id.* at p. 3.  "A welding job is considered to be safety-sensitive because a welder is required to operate a welding torch, a grinder, work with fire, work with noxious chemicals, climb ladders to work above ground on large and/or tall structures, and participate in other hazardous activities."  *Id.* at p. 3 n. 16.

[10] *Id.* at pp. 3-4; Rec. Doc. 46 at pp. 2-3.

[11] Rec. Doc. 31-1 at p. 5.

[12] *Id.*  Plaintiff's deposition testimony indicates that he had been consistently taking hydrocodone and Xanax for the last 23 years.  Rec. Doc. 31-1 at p. 6.

provided Plaintiff with three documents to give to his doctor, including the medical release form explaining the policy, a cover letter explaining the release and asking the doctor to conduct an individualized assessment of Plaintiff's ability to perform the essential functions of the job in compliance with the policy, and a copy of Turner's job description as a welder.[13]

On September 19, 2011, Plaintiff returned the medical release form that his physician, Ken Thomas, M.D., had completed, which stated that Plaintiff "requires pain pills 3-4 times daily."[14] Mr. Crook and Mr. Maddox attempted to explain to Plaintiff that the medical release form would have to affirm that Plaintiff could conform with the policy in order for Plaintiff to be allowed to work as a welder for Turner, but, according to Turner, Plaintiff became angry and left the office.[15] On September 20, 2011, Plaintiff claims that he was contacted by Turner's Baton Rouge, Louisiana office regarding an offer of employment for a welding position, but the Baton Rouge office advised Plaintiff that he would have to resolve the situation with Turner's Sulphur, Louisiana office before Plaintiff could be hired.[16]

Subsequently, on September 22, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC), stating that Turner told Plaintiff he "could not work this job or any job for the company again" because of his physician's recommendations that he take "prescribed medications during working hours if needed."[17]   Plaintiff's charge of discrimination (the "charge" or "EEOC charge") listed the earliest date of discrimination as September 16, 2011 and the latest date of discrimination as September 19, 2011, and Plaintiff did

---

[13] Rec. Doc. 31-1 at p. 6.

[14] *Id.* at p. 7.

[15] *Id.*

[16] Rec. Doc. 46-5 (citing Rec. Doc. 1 ¶ 12).

[17] Rec. Doc. 31-10.

not check the box indicating that the discrimination was "continuing."[18]  After receiving a "right-to-sue" letter from the EEOC, Plaintiff filed the instant lawsuit.

## II.  Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery, disclosure materials, and affidavits on file show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[20]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[21]  If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[22]  Because factual disputes may not be resolved on summary judgment, the nonmoving party need not offer all of its evidence in response to a movant's motion for summary judgment, but rather need only offer enough evidence such that a jury might return a verdict in its favor.[23]  Once the nonmoving party has done so, there is a genuine issue of material fact in dispute, and summary

---

[18] *Id.*

[19] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation omitted).

[22] *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[23] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

judgment should not be granted.[24]

  If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[25]  At that time, the nonmovant must come forward with competent summary-judgment proof of the existence of a genuine dispute regarding a material fact.[26]   However, mere conclusory allegations are not competent summary-judgment proof, and are therefore insufficient to defeat a motion for summary judgment.[27]  Likewise, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment proof.[28]  Instead, the party opposing summary judgment must identify specific evidence in the record[29] and articulate the precise manner in which that evidence supports each claim on which it will bear the burden of proof at trial.[30] Federal Rule of Civil Procedure 56 does not impose on the court a duty to "sift through the record in search of evidence" to support the nonmovant's opposition;[31] the burden to identify such evidence remains wholly on the nonmovant.[32]

---

[24] *Id.*

[25] *See Celotex*, 477 U.S. at 325.

[26] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[27] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

[28] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[29] Fed. R. Civ. P. 56(c); *Ragas*, 136 F.3d at 458.

[30] *Celotex*, 477 U.S. at 324; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Rizzo v. Children's World Learning Ctrs.*, 84 F.3d 758, 762 (5th Cir. 1996); *Little*, 37 F.3d at 1075.

[31] *Ragas*, 136 F.3d at 458.  *See also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992).

[32] *Ragas*, 136 F.3d at 458.

In the context of cases involving a claim of discrimination in violation of the ADA, when considering a motion for summary judgment, courts apply "the burden-shifting framework of *McDonnell Douglas Corp. v. Green*,"[33] which requires the plaintiff to first establish a prima facie case of discrimination.[34]  Therefore, in such ADA discrimination cases, the defendant may satisfy its summary judgment burden by showing that plaintiff has failed to establish a *prima facie* case of discrimination.[35]  To preclude summary judgment, a plaintiff must then produce sufficient evidence that, when considered in the light most favorable to the plaintiff, would allow a "reasonable trier of fact to find" that a *prima facie* case of discrimination exists.[36]

Here, in addition to challenging Plaintiff's ability to establish a *prima facie* case of discrimination, Turner claims that even if Plaintiff has established a *prima facie* case of discrimination, Plaintiff's claims are barred by its defense that the qualification standard it used to screen Plaintiff for the position was a business necessity due to safety considerations.  Turner would have the burden of proving this defense at trial, and so, on this issue, Plaintiff need only show that a genuine issue of material fact is in dispute or that Turner has not substantiated an essential element of its affirmative defense.  Further, Plaintiff need not offer all of the evidence supporting his case, but "only enough evidence from which a jury might return a verdict in [his] favor."[37]

---

[33] *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377 (5th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

[34] *Hammond*, 499 F. App'x at 380 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).  Once the plaintiff establishes a prima facie case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer meets its burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination.  *Id.*

[35] *Hammond*, 499 F. App'x at 380 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

[36] *Deas*, 152 F.3d 471, 476 (5th Cir. 1998).

[37] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991)(internal quotations omitted).

### III.  Exhaustion of Administrative Remedies

*A.  Parties' Arguments*

Turner argues that Plaintiff has failed to exhaust his administrative remedies under the ADA prior to filing suit here, because he alleges additional incidents of discrimination that were not timely asserted in the EEOC charge.  Turner notes that the EEOC charge only alleges acts of discrimination occurring between September 16, 2011 and September 19, 2011, and further does not include any allegation that the discrimination was a "continuing violation" of the ADA.  Turner argues that Plaintiff has now alleged that three other Turner employees–two foremen and a welding test examiner–discriminated against him because of his disability while Plaintiff was working at job sites in Kansas, Louisiana, and Wyoming in 2006 and 2008.[38]  Additionally, Turner notes that Plaintiff claims he was refused employment by Turner's Baton Rouge office on September 20, 2011, pending the resolution of issues with Turner's Sulphur office.[39]  Turner contends that it could not have reasonably expected claims based on the incidents of discrimination in 2006 and 2008, or the withdrawn offer of employment on September 20, 2011, to arise out of the investigation of the allegations in the Plaintiff's charge.[40]  Moreover, Turner states that the 2006 and 2008 incidents of discrimination were not even alleged in the complaint filed in this Court, but only referenced in an answer to Turner's interrogatories.  Thus, Turner concludes that all claims related to the incidents of discrimination not included in Plaintiff's EEOC charge must be dismissed to avoid further prejudice to Turner.[41]  Furthermore, Turner asserts that Plaintiff's claims regarding the incidents in

---

[38] Rec. Doc. 31-1 at p. 10 (noting three instances of alleged discrimination in 2006 and 2008 that Plaintiff identified in his Answers to Turner's First Set of Interrogatories).

[39] *Id.*

[40] *Id.* at p. 11.

[41] Rec. Doc. 66 at p. 2.

2006 and 2008 must also be dismissed, because the incidents occurred more than 300 days prior to the filing of Plaintiff's charge on September 22, 2011, and therefore they are untimely.[42]

Turner also argues that Plaintiff's Louisiana state law claims based on the 2006 and 2008 incidents of discrimination and the withdrawn offer of employment on September 20, 2011 must be dismissed, because Plaintiff did not provide adequate notice to Turner as required by Louisiana Revised Statute § 23:303(C).  Turner avers that the EEOC charge does not give satisfactory notice of the 2006, 2008, and September 20, 2011 incidents of alleged discrimination under Louisiana state law for the same reasons the charge is insufficient under the ADA.[43]

In his opposition, Plaintiff argues that the withdrawal of his offer of employment by Turner's office in Baton Rouge on September 20, 2011 was "'like or related to the allegations contained in the EEOC charge' and would 'reasonably be expected to grow out of the charge,'"[44] because it was based on the events set forth in Plaintiff's EEOC charge regarding actions taken by Turner's Sulphur, Louisiana office.[45]  To the extent that Plaintiff's charge properly notified Turner of Plaintiff's September 20, 2011 claim under the ADA, Plaintiff maintains that it also satisfied the notice requirement of the Louisiana anti-discrimination statute.[46]

With respect to the alleged incidents of discrimination in 2006 and 2008, Plaintiff explains that he provided that information in his response to Turner's discovery requests as background evidence in support of the allegations in his complaint.[47]  Plaintiff explains that he is not seeking to

---

[42] Rec. Doc. 31-1 at p. 11.

[43] *Id.* at p. 12.

[44] Rec. Doc. 46 at p. 5. (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)).

[45] *Id.*

[46] *Id.* at p. 6.

[47] *Id.*

state an independent claim based on the incidents in 2006 and 2008, but merely to provide background evidence in response to Turner's interrogatories, which the ADA does not prohibit him from doing.[48]

### B.  Applicable Law

The ADA incorporates by reference the "powers, remedies, and procedures" set forth in the sections of Title VII of the Civil Rights Act of 1964 pertaining to the creation and enforcement power of the EEOC, the bringing of civil actions, and the conduct of hearings and investigations."[49] Courts have interpreted the ADA's incorporation of these sections as requiring that a plaintiff under the ADA comply with the ADA's administrative prerequisites by filing a timely charge with the EEOC or a state or local agency prior to bringing an action in federal court against his employer.

In *Dao v. Auchan Hypermarket*,[50] the United States Court of Appeals for the Fifth Circuit considered whether the plaintiff, who had not filed a disability discrimination charge with the EEOC or with a state or local agency, was required to exhaust all administrative remedies under the ADA before filing an action in federal court.[51]  In holding that the employee was required to do so, the Fifth Circuit noted that the ADA incorporates the procedures applicable to actions under Title VII, which include "fil[ing] a timely charge with the EEOC, or with a state or local agency with authority

---

[48] *Id.*

[49] 42 U.S.C. § 12117 (incorporating by reference sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of Title 42).

[50] 96 F.3d 787 (5th Cir. 1996).

[51] *Id.* at 789.

to grant or seek relief from the alleged unlawful employment practice."[52]

Similarly, in *Ramirez v. City of San Antonio*,[53] the Fifth Circuit affirmed the district court's grant of summary judgment in favor of the employer where the employee did not file a charge of discrimination under the ADA with the EEOC within 300 days of the alleged discrimination.[54]  In interpreting the administrative procedures under the ADA, the court stated that "a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act," and further elaborated that "the limitations period on an employment discrimination claim 'begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred.'"[55]

A charge that is not timely filed with the EEOC or a state or local agency is not actionable in federal court; however, the United States Supreme Court has held that such prior incidents may be used as background evidence supporting a timely claim of discrimination.  In *National Railroad Passenger Corp. v. Morgan*,[56] the Supreme Court considered whether, and under what circumstances a Title VII plaintiff may file suit with respect to events that fall outside the 300 day statutory time period.  The Court held that prior discrete discriminatory acts that are untimely filed are no longer actionable, but may be used "as background evidence in support of a timely claim."[57]  The Court's holding is equally applicable in a disability discrimination case because the Court was interpreting

---

[52] *Id.*; *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) ("[B]ecause Title I of the ADA, which prohibits employment discrimination on the basis of disability, explicitly incorporates the powers, remedies, and procedures of Title VII, [it is] clear that the procedural requirements of those two provisions must be construed identically.").

[53] 312 F.3d 178 (5th Cir. 2002).

[54] *Id.* at 181.

[55] *Id.* ((quoting *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992)).

[56] 536 U.S. 101 (2002).

[57] *Id.* at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.")

the statutory time period for filing charges set forth in 42 U.S.C. § 2000e–5(e), which is incorporated by reference by the ADA.[58]

With respect to the scope of claims allowed to be brought in federal court, the Fifth Circuit has held that, under the ADA, the scope of the plaintiff's claims are limited to "discrimination like or related to allegations contained in the charge" and the scope of the resulting EEOC investigation that would "reasonably be expected to grow out of the charge."[59] However, the Fifth Circuit has also held that the scope of an EEOC charge should be broadly interpreted.  For example, in *Gamble v. Birmingham Southern Railroad Co.*,[60] the Fifth Circuit emphasized, in the context of a race discrimination claim,  that "the scope of an EEOC complaint should not be strictly interpreted," and reiterated its "reluctance to allow procedural technicalities to bar claims under the Act."[61]  The Fifth Circuit found that although the EEOC charge only alleged that black railroad switchmen were denied promotions to conductor on the basis of race, the charge should have been interpreted to incorporate the switchmen's claim that they were denied promotion to supervisor on the basis of race, because the question was "like or related to" the original charge before the EEOC, and the discrimination was of the same type and character, and the same plaintiffs were involved.[62]  The Fifth Circuit has also noted that interpretation of charges with the "utmost liberality" is appropriate given "that such charges are generally prepared by laymen untutored in the rules of pleading."[63]

---

[58] *See* 42 U.S.C. § 12117.

[59] *Crawford*, 2001 WL 1751457 at *3 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465-66 (5th Cir. 1970)).

[60] 514 F.2d 678 (5th Cir. 1975).

[61] *Id.* at 688.

[62] *Id.* at 689.

[63] *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) (noting the liberal interpretation of EEOC charges in the context of a Title VII employment discrimination case).

Under Louisiana law, a plaintiff who intends to pursue a court action for discrimination "shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action [and] shall detail the alleged discrimination."[64]   An EEOC charge generally satisfies the pre-litigation notice requirement under Louisiana Revised Statute § 23:303(C) provided the charge "effectively accomplishe[s] the same goals as the statutory notice under the state law," which includes giving sufficient notice to allow the employer to preserve evidence and attempt to resolve the dispute.[65]

## C. Analysis

Turner argues that Plaintiff has not fulfilled the administrative prerequisites to filing claims in this Court with respect to alleged incidents of discrimination in 2006, 2008, and on September 20, 2011.  Plaintiff claims that he only identified the three incidents of alleged discrimination in 2006 and 2008 as background evidence in his responses to Turner's interrogatories, and he is only relying on the incidents as background evidence, rather than attempting to bring independent claims based on the earlier discrimination in 2006 and 2008.  Furthermore, there is no indication in the record before the Court that Plaintiff is attempting to assert claims based on the three incidents of alleged discrimination in 2006 and 2008.  As the Supreme Court stated in *Morgan*, the 300-day limitations period under the ADA does not prohibit Plaintiff from relying on these incidents "as background evidence in support of a timely claim."[66]   Considering that Plaintiff has articulated

---

[64] La. Rev. Stat. § 23:303(C).

[65] *See Baker v. Fedex Ground Package Sys., Inc.*, 278 F. App'x 322, 326-27 (5th Cir. 2008); *Plaisance v. Airgas-Gulf States, Inc.*, No. 07-8440, 2008 WL 1730535, at *6 (E.D. La. Apr. 10, 2008) (Vance, C.J.); *Trahan v. Lowe's Inc.*, No. 01-3243, 2002 WL 1560272, at *6 (E.D. La. July 12, 2002); *Pugh v. J.C. Penney Co., Inc.*, 1996 WL 263219, at *5 (E.D. La. May 15, 1996); *Simpson-Williams v. Andignac*, 2004-1539 (La. App. 4 Cir. 4/20/05); 902 So. 2d 385, 387-88.

[66] 536 U.S. at 113.

sufficient facts and pointed to evidence in the record that he does not intend to rely on the alleged incidents of discrimination in 2006 and 2008 as actionable claims under the ADA, to the extent Turner is seeking to prevent Plaintiff from using these alleged incidents of discrimination as background evidence, Turner's motion for summary judgment on this issue must be denied.

The withdrawn offer of employment from Turner's Baton Rouge office on September 20, 2011 was identified in Plaintiff's complaint, but Turner argues that the EEOC charge did not give adequate notice of this claim.  Although the scope of Plaintiff's claims in federal court is limited to "discrimination that is like or related to allegations contained in the charge," Plaintiff may pursue claims that would fall within the scope of the EEOC investigation that could "reasonably be expected to grow out of the charge."[67]  Turner has presented no evidence to contradict Plaintiff's assertion that Turner's Baton Rouge office made a decision that was based entirely on the employment decision made by Turner's Sulphur office.  Accordingly, the charge provided adequate notice of the alleged discrimination on September 20, 2011 under the ADA and under Louisiana law, because the charge detailed the facts of the alleged discrimination underlying the employment decision made by Turner's Baton Rouge, Louisiana office.  Turner's motion for summary judgment regarding the alleged discrimination on September 20, 2011 must also be denied, because Plaintiff has alleged facts and pointed to evidence in the record supporting his claim that the withdrawn offer of employment by Turner's Baton Rouge office was "like or related to" the discrimination alleged in the charge.

---

[67] *Id.*

## IV.  Discrimination Under the ADA

### A.  Parties' Arguments

#### 1.  Turner's Argument that Plaintiff is Unable to Establish a Prima Facie Case of Discrimination

In its motion requesting summary judgment, Turner acknowledges Plaintiff's allegations in the complaint that his claim is based on a "record of" impairment and/or because Plaintiff is "regarded as" disabled.  Turner also concedes that it "was aware that Plaintiff had a medical 'record of' disability regarding his left hand."[68]  However, Turner avers that Plaintiff is unable to establish a *prima facie* case of discrimination under the ADA, because he cannot establish that the adverse employment action–Turner's decision not to rehire Plaintiff–was on the basis of a "record of" disability and/or because Turner regarded Plaintiff as disabled.[69]  Rather than discrimination based on a prior medical history or because Turner regarded Plaintiff as disabled,  Turner states that its decision not to rehire Plaintiff was because of Plaintiff's "need to take narcotic pain medication within eight hours of coming to work as well as while on duty," and that Turner has a safety policy justified by business necessity that disqualified individuals using narcotics, and certain other medications, while on the job.[70]  Turner asserts that Plaintiff's own allegations in the complaint, and the affidavits of Dan Crook, Turner's Senior Medic, and Paul Maddox, a contracted physician's assistant, demonstrate that Turner "had previously hired plaintiff to work as a welder on multiple occasions over a six-year period" and that Plaintiff did not disclose to Turner on any occasion prior to September 16, 2011 that he was taking narcotic pain medication during working hours."[71]

---

[68] Rec. Doc. 31-1 at p. 14.

[69] *Id.* (citing Rec. Doc. 1 ¶ 10).

[70] *Id.*

[71] *Id.* at p. 15.

According to Turner, this evidence indicates that Plaintiff's disability "was not a factor in Turner's decision not to hire [Plaintiff] in September 2011."[72] Therefore, Turner argues that Plaintiff cannot produce competent summary judgment evidence to establish the "essential causal link between his purported disability and the fact that Turner declined to re-hire him in September 2011."[73]

Even if Plaintiff can establish a *prima facie* case of discrimination, Turner claims that its policy qualifies as a business necessity under the ADA, which would bar Plaintiff's recovery, because the policy is both job-related and justified by business necessity.[73] First, Turner argues that the policy "is 'necessary' because it is necessitated by the duties imposed on employers under the Occupational Safety and Health Act ("OSHA") and other statutes, as well as by the terms of Turner's engagement by its clients."[74]  Turner relies on the affidavit of Michael Phelps, Turner's Vice President of Health, Safety and Environmental, to demonstrate that Turner adopted the policy in 2007 after "a series of accidents involving employees who were taking narcotic medication" to ensure that Turner was complying with its obligations under OSHA and to its clients to maintain a safe working environment.[75]  Turner elaborates that even if the side effects of these medications, such as drowsiness or dizziness, do not occur in everyone, the possibility of their occurrence is always present and inherently dangerous when an individual performs a safety-sensitive task such as welding.[76]

Next, Turner asserts that the policy meets the second requirement of the business necessity

---

[72] *Id.* at p. 14.

[73] *Id.*

[73] *Id.* at p. 19.

[74] *Id.*

[75] *Id.*

[76] *Id.*

16

defense, because the policy is "related to 'the specific skills and physical requirements of' a welder."[77]  Turner contends that the possible side effects of the specific medications restricted by the policy could lead to particularly catastrophic results in the context of a job such as welding that requires working around fire, hot metal, hazardous chemicals and noxious gas while balancing on a ladder, elevated scaffolding, uneven surfaces, or being in confined spaces.[78]

### 2. Plaintiff's Opposition

In opposition to the motion for summary judgment, Plaintiff contends that he has a "disability" recognized under the ADA, because (1) he was regarded as having a disability, and (2) he has an actual disability.[79]  Plaintiff avers that Turner regarded Plaintiff as disabled when it learned that he was prescribed hydrocodone and Xanax, and, in response, withdrew the offer of employment because it "perceived that any person who takes prescription narcotics, benzodiazepines, or muscle relaxers is too impaired to safely perform any jobs at Turner."[80]  Additionally, Plaintiff claims that Turner's assertions in its position statement to the EEOC that Plaintiff "posed a definite risk and hazard (namely a direct threat) to himself and others" proves that Turner regarded Plaintiff as disabled under the ADA.[81]  Plaintiff further argues that Turner must have regarded Plaintiff as disabled within the meaning of the ADA, because otherwise "there would be no basis for considering him to pose such a significant risk . . . that could not be eliminated or even reduced by

---

[77] *Id.* at p. 20.

[78] *Id.* at pp. 20-21.

[79] *See* Rec. Doc. 46 at pp. 8, 11.  Plaintiff's opposition does not argue that Turner discriminates on the basis of a "record of" disability, although as much is alleged in the complaint.

[80] *Id.* at pp. 8-9.

[81] *Id.* at p. 9.

a reasonable accommodation."[82]

Plaintiff also claims that he is actually disabled under the ADA because his physical impairment, the loss of much of his left hand, substantially limits one or more of his major life activities, such as lifting.[83]  Based on Plaintiff's assertion that he is actually disabled, he concludes that he "has established a *prima facie* case of discrimination under the ADA and the Defendant is not entitled to summary judgment."[84]

Furthermore, Plaintiff states that "before excluding an individual from employment, an employer must conduct an 'individualized assessment of the individual's present ability to safely perform the essential functions of his job,'"[85] which Plaintiff argues that Turner did not do.  Indeed, by doing his job without incident from 2005 until 2011, Plaintiff contends that he demonstrated his ability to safely perform the essential functions of his job.[86]  Plaintiff represents that the record in this case "unequivocally establishes" that Turner did not base its employment decision on the kind of individualized and fact-intensive assessment envisioned by the ADA, but instead on a "blanket 'zero-tolerance' policy," which assumes that "any person who takes prescription narcotics, benzodiazepines, or muscle relaxers is too impaired to safely perform any jobs at Turner."[87]  Plaintiff contends that Turner's failure to conduct an individualized assessment of Plaintiff's abilities is supported by the deposition testimony of Paul Maddox, Turner's Senior Medic, stating that he "did not conduct an individualized inquiry of Plaintiff's ability to perform the essential function of the

---

[82] *Id.* at pp. 9-10.

[83] *Id.* at pp. 11-13.

[84] *Id.* at p. 13.

[85] *Id.* at p. 14 (quoting *Chevron U.S.A., Inc. v. Echazabal*, 535 U.S. 73, 86 (2002)).

[86] *Id.*

[87] *Id.* at p. 10.

welder position or if he could be reasonably accommodated."[88]

Plaintiff notes that Turner stated to the EEOC that Plaintiff "posed a definite risk and hazard (namely a direct threat)" to himself and others, but claims that Turner's motion for summary judgment lacks any reference to the direct threat defense, relying solely on business necessity.[89] Plaintiff asserts that this inconsistency in Turner's defenses is "probative evidence of pretext," and an attempt by Turner to mask its "direct threat" defense under the "guise of business necessity" in order to take advantage of "an inherently easier standard to satisfy."  Therefore, Plaintiff argues that the Court should require Turner to justify its employment policies based on the direct threat defense rather than the business necessity defense.[90]

Plaintiff asserts that Turner had a legal obligation to determine, based on an individualized assessment, whether any alleged threat posed by Plaintiff could be eliminated by reasonable accommodation before refusing to hire Plaintiff.[91]  Plaintiff also states that "[i]n cases such as this one, where the employer withdraws its offer of employment based on a policy, which by its own admission, allows 'no accommodations', it would be impossible for the employee to initiate the required interactive process," and the Plaintiff is therefore not required to identify the reasonable accommodation.[92]  Because Turner failed to conduct an individualized assessment to determine whether Plaintiff posed a direct threat and whether the threat could be eliminated by a reasonable accommodation, Plaintiff contends that Turner is precluded from summary judgment in its favor.[93]

---

[88] *Id.*

[89] *Id.* at p. 21.

[90] *Id.* at p. 22.

[91] *Id.* at p. 20.

[92] *Id.* (citing *Cutrera v. Bd.of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

[93] *Id.* at p. 24.

Finally, Plaintiff argues that Turner is not entitled to justify its policy as a business necessity. According to Plaintiff, "[a] safety-based qualification standard–like Defendant's–is consistent with business necessity if, after considering 'the magnitude of possible harm as well as the probability of occurrence . . . [the standard] substantially promotes the [employer's] business' needs.'"[94]  Here, Plaintiff concludes that Turner "incorrectly focuses on the possibility of harm rather than the probability of occurrence," because Plaintiff avers that only in rare circumstances do individuals taking narcotics and benzodiazepines experience the side effects that may inhibit the ability to work safely.[95]

### 3.  Turner's Reply

In reply, Turner objects to Plaintiff's "attempt[] to assert the third prong of the ADA–'actual disability'–as an additional basis for his claims" for the first time in his opposition to summary judgment.[96]  Because the complaint only refers to "claims under the 'regarded as' and 'record of' prongs of the [ADA]," Turner argues that the Court must reject Plaintiff's "actual disability" arguments because "a claim which is not raised in the complaint, but rather, is raised only in response to a motion for summary judgment is not properly before the court."[97]

Turner also insists that Plaintiff mischaracterizes the facts.  First, Plaintiff refers to Turner's drug policy as one of "Zero Tolerance," even though Turner argues that the policy does not contain the words "zero tolerance," and only states that "employees may not use [certain] drugs 8 hours

---

[94] *Id.* at p. 16 (quoting *Atkins*, 677 F.3d at 682).

[95] *Id.* at pp. 15-16, 18.

[96] Rec. Doc. 66 at pp. 1-2.

[97] *Id.* at p. 2 (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

before or during work shifts."[98]  Second, Turner indicates that Plaintiff "selectively lifted a statement from Turner's EEOC Position Statement to the effect that use of hydrocodone and Xanax may pose a direct threat in the workplace and misrepresents it as an admission by Turner that it had determined that Plaintiff himself posed such a threat."[99]  However, Turner argues that "no such determination was made" as to whether Plaintiff posed a direct threat, because Plaintiff's own acts and omissions, including his allegedly angry response to Mr. Crook and Mr. Maddox, prevented an individualized evaluation.[100]

Further, Turner emphasizes that Plaintiff's argument that an individualized assessment is required under both the "direct threat" and "business necessity" defense is contrary to binding Fifth Circuit precedent.  According to Turner, the Fifth Circuit held in *E.E.O.C. v. Exxon Corp.*,[101] "that an employer asserting an across-the-board, safety-based qualification standard, such as Turner's prescription drug Policy, may defend it under the 'business necessity' defense without undertaking the individualized assessment required for the 'direct threat' defense."[102]  Turner reiterates that uncontroverted evidence before the Court establishes that "the Policy challenged by Plaintiff is solely derived from Turner's statutory and contractual obligations to make the safety of its employees and those of its clients its paramount goal."[103]

Finally, Turner disputes Plaintiff's conclusion that it violated the ADA by not offering Plaintiff a reasonable accommodation. Turner contends that well-settled law dictates that an

---

[98] *Id.* at pp. 2-3.

[99] *Id.* at p. 3.

[100] *Id.* at pp. 3-4.

[101] 230 F.3d 871 (5th Cir. 2000).

[102] Rec. Doc. 66 at p. 8 (quoting *Exxon*, 230 F.3d at 875).

[103] *Id.* at pp. 8-9.

employer is "not required to provide reasonable accommodation to an individual who meets the definition of disabled under the 'regarded as' prong of the ADA," particularly "where, as here, the employee has never requested nor suggested reasonable accommodation."[104]

## B.  Law and Analysis

### 1.  Establishment of a Prima Facie Case of Discrimination

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."[105]   To establish a *prima facie* case of discrimination under the ADA, a plaintiff must produce sufficient evidence for a reasonable trier of fact to conclude that "the plaintiff has a disability, that he is qualified for the job, and that he suffered an adverse employment decision because of his disability."[106]

### 2.  Definition of "Disability" Under the ADA

A "disability" is defined under the ADA to include "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such

---

[104] *Id.* at p. 10 (citing 29 C.F.R. 1630.2(o)(4)(2012); *Gil v. Vortex, LLC*, 697 F. Supp. 2d 234, 241 (D. Mass. 2010)).

[105] 42 U.S.C. § 12112(a).

[106] *Hammond*, 499 F. App'x at 381 (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996); *see also Pinkerton v. Spellings*, 529 F.3d 513, 517-19 (5th Cir. 2008) (clarifying that the ADA's causation standard does not require a showing that the discrimination was the sole cause of the adverse employment action)). Once the plaintiff establishes a prima facie case of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer meets its burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination.  *Hammond*, 499 F. App'x at 380 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

an impairment; or (C) being regarded as having such an impairment."[107] Regulations promulgated

to implement the ADA explain that the "record of an impairment" prong under Paragraph (B) of 42

U.S.C. § 12102(1) applies to individuals with "a record of a disability if the individual has a history

of, or has been misclassified as having, a mental or physical impairment that substantially limits one

or more major life activities."[108] The ADA elaborates on the definition of an individual who is

regarded as disabled under Paragraph (C) of 42 U.S.C. § 12102(1):

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[109]

Only impairments that substantially affect a major life activity, such as "caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating, and working,"

qualify as disabilities under the ADA.[110]  In *Sutton v. United Air Lines, Inc.*, the Supreme Court

clarified that the effects of any mitigating measures a person takes to correct for an impairment,

"both positive and negative, must be taken into account when judging whether that person is

substantially limited in a major life activity and thus disabled under the Act."[111]  Furthermore, courts

are required to make an "individualized, case-by-case determination" of whether an individual has

---

[107] 42 U.S.C. § 12102(1).

[108] 29 C.F.R. § 1630.2(k).

[109] 42 U.S.C. § 12102(3)(A).  *See also Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006) ("Under the ADA, a plaintiff is 'regarded as' disabled if he: (1) has an impairment which is not substantially limiting but which the employer perceives as ... substantially limiting ...; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.").

[110] 42 U.S.C. § 12102(2)(A); *see also Deas v. River W., L.P.*, 152 F.3d 471 476 (5th Cir. 1998).

[111] 527 U.S. 471, 482 (1999).

a disability by evaluating "the effect of [an] impairment on the life of the individual," to determine whether the individual is substantially limited in a major life activity by his impairment.[112]

The complaint alleges that Turner discriminated against Plaintiff because of a record of disability and/or because Turner regarded Plaintiff as disabled.  The parties do not dispute that Plaintiff was disabled, but whether Plaintiff's disability incorporates the use of certain medications. Turner argues that its decision not to hire Plaintiff was not "because of a disability," but because of his need to take certain medications.[113]  Indeed, Turner states in its motion for summary judgment that "it was aware that Plaintiff had a medical 'record of' disability regarding his left hand."[114] Plaintiff has also produced considerable evidence of a physical impairment resulting from the loss of much of his left hand and use of his thumb, for which Plaintiff must take certain medications, namely Xanax and hydrocodone, to treat the related pain and anxiety.  Further, the Supreme Court, in *Sutton*, held that the positive and negative effects of any mitigating measures should be taken into account when evaluating an impairment.[115]  Here, Plaintiff is required to take a narcotic and a benzodiazepine to medicate the pain and anxiety caused by his disability, and Turner does not dispute that Plaintiff was not hired because he had to use those medications.  Considering that Turner does not dispute Plaintiff's disability status and the evidence before the Court is sufficient to demonstrate that Plaintiff is disabled under the ADA because he had a record of disability and/or because Turner regarded Plaintiff as disabled and refused to hire him because of the pain and anxiety medication he required to help manage his disability, Plaintiff has offered sufficient evidence

---

[112] *Deas,* 152 F.3d at 478; *see also Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).

[113] Rec. Doc. 31-1 at p. 13.

[114] Rec. Doc. 31-1 at p. 14.

[115] 527 U.S. at 482.

regarding the first element of his *prima facie* case of discrimination to defeat summary judgment on that issue.

### 3. *Definition of a "Qualified Individual" Under the ADA*

#### a. Capacity to Perform the Essential Functions of the Job

As noted above, the ADA prohibits discrimination against "qualified individual[s]," which means an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires."[116]  In determining whether a plaintiff is a "qualified individual" with a disability, a court must first determine whether the plaintiff can perform the essential functions of the job, which are those functions that bear more than a marginal relationship to the job at issue.[117]  Only if the court determines that the plaintiff cannot perform the essential functions of the job does the court consider whether a reasonable accommodation by the employer would enable him to perform those functions.[118]  Although the ADA provides a right to a reasonable accommodation, it "does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties."[119]

---

[116] 42 U.S.C. § 12111(8).  *See also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.").

[117] *See Newman v. Chevron U.S.A.*, 979 F. Supp. 1085, 1090 (S.D. Tex. 1997) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)).  *See also Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir. 1995).

[118] *Chandler*, 2 F.3d at 1393-94.

[119] *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998); *see also Griffin*, 661 F.3d at 224 ("The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation.  The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.") (internal quotations omitted).

Here, Plaintiff presents ample evidence that he performed the job of welder for Turner for six years between 2005 and 2011 without incident, and, in fact, Turner notes that "the <u>only</u> thing that changed between late 2005 when Plaintiff was first hired, and September 16, 2011, when [Plaintiff] was denied employment," was Plaintiff's disclosure of his use of hydrocodone and Xanax during work hours.[120]   Based on the evidence Plaintiff has produced, a reasonable trier of fact could conclude that Plaintiff could perform the essential functions of the welding position he sought. Therefore, Plaintiff has put forth sufficient evidence to establish the second element of his *prima facie* case of discrimination, and defeat summary judgment on that ground.

### b.  Qualification Standards to Screen Job Applicants

Generally, "an employer may develop and use qualification standards or other selection criteria in an attempt to screen out individuals who cannot perform the essential functions of the job."[121]   However, if an employer imposes eligibility requirements that tend to screen out the disabled, the employer will be deemed to have discriminated under the ADA,[122] unless "the standard, test, or other selection criteria . . . is shown to be job-related for the position in question and is consistent with business necessity."[123]

The ADA provides employers a "business necessity" defense for the imposition of certain qualification standards or criteria:

---

[120] Rec. Doc. 31-1 at p. 17 (emphasis in original).

[121] *Kapche v. City of San Antonio*, 176 F.3d 840, 842-43 (5th Cir. 1999).

[122] *Id.  See also Chevron v. Echazabal*, 536 U.S. 73, 78 (2002).

[123] 42 U.S.C. § 12112(b)(6).

(a) In general

It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

(b) Qualification standards

The term "qualification standards" may include a requirement that an individual shall not pose a direct threat to the health or safety ot other individuals in the workplace.[124]

To successfully defend a qualification standard on the basis of the business necessity defense, an employer must prove by a preponderance of the evidence that such standards are: "(1) uniformly applied; (2) job-related for the position in question; (3) consistent with business necessity; and (4) cannot be met by a person with plaintiff's disability even with a reasonable accommodation."[125]

A qualification is "job-related," if the employer demonstrates "that the qualification standard is necessary and related to 'the specific skills and physical requirements of the sought-after position.'"[126] "Similarly, for a qualification standard to be 'consistent with business necessity,' the employer must show that it substantially promotes the business's needs."[127] Concerning safety-based qualification standards, the Fifth Circuit has elaborated that:

In evaluating whether the risks addressed by a safety-based qualification standard constitute a business necessity, the court should take into account the magnitude of possible harm as well as the probability of occurrence. The acceptable probability of an incident will vary with the potential hazard posed by the particular position: a probability that might be tolerable in an ordinary job might be intolerable for a

---

[124] 42 U.S.C. § 12113.

[125] *Atkins v. Salazar*, 677 F.3d 667, 681-82 (5th Cir. 2011).

[126] *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001) (quoting *Belk v. Sw. Bell Tel. Co.*, 194 F.3d 946, 951 (8th Cir. 1999)).

[127] *Atkins*, 677 F.3d at 682.

position involving atomic reactors, for example. In short, the probability of the occurrence is discounted by the magnitude of its consequences.[128]

By defining the term "qualification standards" to "include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace,"[129] the ADA provides that in certain circumstances an employer may be required to prove than an employee posed a "direct threat" to the safety of others in order to escape liability for discrimination under the ADA.  An employee is a direct threat if he poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."[130]  In determining "whether a person poses a direct threat," an employer must conduct "an individualized assessment of the person's 'present ability to safely perform the essential functions of the job.'"[131]

The relationship between "business necessity" and "direct threat" has been the subject of some litigation.  On interlocutory appeal in *Exxon*, the Fifth Circuit directly addressed "whether an employer may defend [the employment action] as based on a standard justified as a business necessity or must demonstrate a 'direct threat' in each circumstance."[132]  In that case, the employer adopted a policy that permanently removed any employee who had undergone treatment for substance abuse from "certain safety-sensitive, little-supervised positions," which applied to approximately ten percent of all of the employer's positions, and the plaintiff argued that the only defense available under the ADA when an employer imposes a safety qualification standard is for

---

[128] *Id.* (quoting *Exxon*, 203 F.3d at 875).

[129] 42 U.S.C. § 12113(b).

[130] *Id.* § 12111(3).

[131] *Kapche v. City of San Antonio*, 304 F.3d 493, 494 (5th Cir. 2002) (quoting 29 C.F.R. § 1630.2(r)).

[132] *Exxon*, 203 F.3d at 873.

the employer to prove that the individual posed a "direct threat."[133]  The Fifth Circuit disagreed with the plaintiff, holding that "in cases where an employer has developed a [safety-based qualification] standard applicable to all employees of a given class . . . an employer need not proceed under the direct threat provision of § 12113(b) in such cases but rather may defend the standard as a business necessity."[134]

The court elaborated that "[t]he direct threat test applies in cases in which an employer responds to an individual employee's supposed risk that is not addressed by an existing qualification standard."[135]  Furthermore, the Fifth Circuit noted that "direct threat and business necessity do not present hurdles that comparatively are inevitably higher or lower but rather require different types of proof":

> Direct threat focuses on the individual employee, examining the specific risk posed by the employee's disability.  In contrast, business necessity addresses whether the qualification standard can be justified as an across-the-board requirement.  Either way, the proofs will ensure that the risks are real and not the product of stereotypical assumptions.[136]

Thus, an employer may defend a qualification on either ground, depending on the nature of the qualification standard.

Here, Turner raises the defense that its policy imposed a "qualification standard" that, based on the evidence before the Court, Plaintiff could not comply with due to the medication he required to mitigate the effects of his disability.  Turner contends that, although its policy may have screened out disabled individuals such as Plaintiff, it was justified as a business necessity.  Turner produces

---

[133] *Id.* at 872.

[134] *Id.* at 875.

[135] *Id.*

[136] *Id.* (internal citations omitted).

the affidavit of Michael Phelps, Turner's Vice President of Health, Safety, and Environmental, to explain that the policy is "job-related," because it relates to the specific skills and physical requirements of being a welder, which requires working around fire, hot metal, and hazardous conditions, while balancing on elevated scaffolding and uneven surfaces or being in confined spaces. Turner also relies on Mr. Phelps' affidavit to demonstrate that Turner's policy is "consistent with business necessity," because it "substantially promotes the business'[] needs."[137]   Specifically, the affidavit of Mr. Phelps attests that the policy was adopted after "a series of accidents involving employees who were taking narcotic medication" and consultation with its clients, in order to ensure that Turner was complying with its obligations under OSHA and to its clients to maintain a safe working environment.[138]   Turner argues that even if the side effects of these medications, such as drowsiness or dizziness, do not occur in everyone, the possibility of their occurrence is always present and inherently dangerous when an individual performs a safety-sensitive task such as welding, especially in a particularly hazardous environment such as the facilities of Turner's clients.[139]

Plaintiff does not directly refute Turner's evidence supporting its defense of business necessity, but rather, Plaintiff counters that Turner is applying the wrong legal standard, and Turner must justify its policy by showing that the plaintiff here posed a "direct threat."  While Turner has defended its policy based on business necessity, which the Fifth Circuit's holding in *Exxon* explicitly permits Turner to do without showing that Plaintiff posed a direct threat to others,[140]  Plaintiff is

---

[137] *Atkins*, 677 F.3d at 682.

[138] Rec. Doc. 31-10 at p. 19.

[139] Rec. Doc. 31-1 at p. 19.

[140] *Exxon*, 203 F.3d at 875.

critical of *Exxon*, saying that it is "at odds with the language of the [ADA] and the EEOC's guidance, not to mention, illogical."[141]   However, the Fifth Circuit specifically considered the Interpretive Guidance issued by the EEOC and the language of the ADA to which Plaintiff points in support of its argument criticizing *Exxon*, concluding: "We have found nothing in the statutory language, legislative history, or case law that persuades that the direct threat provision addresses safety-based qualification standards in cases where an employer has developed a standard applicable to all employees of a given class."[142]   Accordingly, Plaintiff's argument has no merit considering that this Court must follow controlling authority from the Fifth Circuit, which makes clear that the defense of business necessity applies to general safety-based qualifications standards developed by an employer and applied across-the-board to a particular class of employees and that in such instances an employer need not show that the employee posed a "direct threat."

Nonetheless, Plaintiff produces–albeit in the context of arguing that Turner did not evaluate whether Plaintiff posed a direct threat–evidence establishing a genuine issue of material fact regarding the application of Turner's business necessity defense.  Specifically, Plaintiff produces the evaluation of Dr. Charles K. Billings stating that Plaintiff did not experience any of the potential side effects of his medications.[143]   Additionally, Plaintiff produces clinical studies of the low percentage of patients who take narcotic pain medication and experience the adverse side effects,[144] and statistics on workplace safety, which according to Plaintiff, indicates that only small percentage of workplace accidents in 2009 were caused by medication.[145]   Such evidence is useful in evaluating

---

[141] Rec. Doc. 46 at p. 24.

[142] *Exxon*, 203 F.3d at 875.

[143] Rec. Doc. 46-11.

[144] Rec. Doc. 46 at pp. 16-19.

[145] *Id.* at p. 18.

whether Turner's qualification standard indeed meets the standard of a business necessity.

The Fifth Circuit has instructed that when evaluating whether a "safety-based qualification standard constitute[s] a business necessity, the court should take into account the magnitude of possible harm as well as the probability of occurrence. . . . The probability of the occurrence is discounted by the magnitude of its consequences."[146]   In sum, Turner produces evidence emphasizing the importance of reducing the alleged risk resulting from the use of certain medications, because of the magnitude of the possible harm, while Plaintiff produces evidence that the possibility of occurrence, particularly in situations like Plaintiff's, where medication is taken as prescribed, is relatively minimal, creating a material issue of fact as to whether the probability of occurrence outweighs the magnitude of possible harm.   Further, Turner's evidence that previous safety incidents involved narcotic pain medications, is disputed by Plaintiff's evidence that those medications, when taken as prescribed, rarely cause adverse side effects.   Therefore, this Court cannot decide, without weighing the evidence before it–which the Court should not do on a motion for summary judgment–whether Turner's policy substantially promotes its business needs considering both the probability of occurrence of the alleged risk and the magnitude of the potential consequences.   Accordingly, a genuine issue of material fact is in dispute regarding whether Turner's policy is consistent with business necessity, because it is disputed whether the probability of the occurrence is outweighed by the magnitude of the consequences.   Therefore, summary judgment on Turner's affirmative defense of business necessity must be denied.[147]

---

[146] *Exxon*, 203 F.3d at 875.

[147] The Court further notes that Turner has not expressly addressed all four factors it must meet to establish that its screening qualification was a business necessity, further supporting the denial of summary judgment on Turner's business necessity defense.   *See Atkins*, 677 F.3d at 682; *see also supra* note 125 and accompanying text.

### 4.  Adverse Employment Action "Because of" a Disability

Finally, even if a plaintiff establishes that he was disabled within the meaning of the ADA and a qualified individual for the job at issue, he must also show that the adverse employment action was taken because of the disability.[148]

It is undisputed that Turner hired Plaintiff numerous times prior to September 2011, and each time Plaintiff communicated to Turner that he was taking no medication, or that he was only taking Xanax and hydrocodone on rare occasions while off-duty.  The evidence now before the Court also establishes that on September 16, 2011, Plaintiff disclosed to Turner for the first time that he was taking Xanax and hydrocodone as prescribed by his physician, which included before and during work shifts.  The use of these drugs within eight hours of reporting to work or during shifts is expressly prohibited by Turner's policy for employees in safety-sensitive positions, such as welders. Turner informed Plaintiff that he could not be rehired as a welder unless he could provide a doctor's release stating that he could conform to the policy.

As explained above, the disability alleged here is not just Plaintiff's impaired hand, but the fact that he must take certain medications to manage the pain and anxiety caused by his impaired hand.  It is undisputed that Turner refused to re-hire Plaintiff because of his need to use narcotic and other medication.  Therefore, Plaintiff has put forth sufficient evidence to allow a reasonable trier of fact to conclude that Turner refused to hire Plaintiff because of an alleged or perceived disability, and thereby defeat summary judgment on this issue.

### V.  Conclusion

For the foregoing reasons, the Court finds that Plaintiff has produced sufficient evidence to

---

[148] *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998).

establish a *prima facie* case of discrimination, and that Plaintiff has produced sufficient evidence to raise a genuine issue of material fact in dispute regarding whether Turner's policy prohibiting the use of certain medications, including narcotics within eight hours of work shifts and during work is a business necessity.  Accordingly,

**IT IS HEREBY ORDERED** that Turner's Motion for Summary Judgment, or, Alternatively, Partial Summary Judgment[149] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  21st  day of May, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[149] Rec. Doc. 31.