**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HENRY J. HUFFMAN** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 12-1061** |
| **TURNER INDUSTRIES GROUP, L.L.C.** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

Before the Court is Plaintiff Henry J. Huffman's ("Plaintiff") Motion to Strike Michael Phelps,[1] wherein he seeks the exclusion of Michael Phelps testimony based on Turner's failure to comply with Federal Rules of Civil Procedure ("FRCP") 26 and 16, and Defendant Turner Industries Group, L.L.C.'s ("Turner") Motion and Incorporated Memorandum in Support for Leave to File Supplemental Witness List,[2] wherein it requests leave to file a supplemental witness list after the deadline provided for in the scheduling order. Having considered the motions, memoranda in support, the oppositions, the record, and the applicable law, the Court will deny the Motion to Strike Michael Phelps, and grant in part and deny in part the Motion and Incorporated Memorandum in Support for Leave to File Supplemental Witness List.

**I. Background**

Plaintiff Henry J. Huffman ("Plaintiff") filed a complaint in the Eastern District of Louisiana on April 26, 2012 and invoked this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[3]

---

[1] Rec. Doc. 94.

[2] Rec. Doc. 103.

[3] Rec. Doc. 1. An amended complaint was subsequently filed by Plaintiff demanding a jury trial. Rec. Doc. 17.

Specifically, Plaintiff claims that Turner refused to hire him because he is required to take hydrocodone, a narcotic pain medication, and Xanax, a benzodiazepine, while working, to manage the pain and anxiety caused by an injury to his left hand, and Turner's Drug, Alcohol, and Contraband Policy (the "policy") prohibits the use of such narcotic medications during working hours or within eight hours of reporting to work.

This Court issued a scheduling order requiring counsel for the parties to "file into the record and serve upon their opponents a list of all witnesses who will be called to testify at trial and all exhibits which will be used at trial no later than December 3, 2012."[4]   The scheduling order specifically states that "[t]he Court will not permit any witness, expert or fact, to testify . . . unless there has been compliance with this Order as it pertains to the witness[,] . . . without an order to do so issued on motion for good cause shown."[5]   On December 3, 2012, Turner filed Defendant's Preliminary Witness and Exhibit Lists.[6]   On January 22, 2013, Turner filed Defendant's First Supplemental Witness List, which listed Michael Phelps and Kyle Woods as witnesses, without requesting leave of Court.[7]   On February 7, 2013, Plaintiff filed a Motion to Strike Michael Phelps.[8]   Turner filed a response[9] to the motion to strike on February 19, 2013, and simultaneously filed the instant Motion and Incorporated Memorandum in Support for Leave to File Supplemental Witness List,[10] noting that the Supplemental Witness List filed on January 22, 2013 should have been marked

---

[4] Rec. Doc. 14.

[5] *Id.*

[6] Rec. Doc. 23.

[7] Rec. Doc. 77.

[8] Rec. Doc. 94.

[9] Rec. Doc. 102.

[10] Rec. Doc. 103.

deficient by the Clerk's office because Turner failed to request leave from the Court.  On February

25, 2013, Plaintiff filed a reply to the Motion to Strike Michael Phelps.[11]

## II.  Parties' Arguments

### A. *Motion to Strike Michael Phelps*

#### 1. *Plaintiff's Argument in Support of the Motion to Strike*

In support of the pending motion to strike, Plaintiff argues that Mr. Phelps should be

precluded from testifying at trial because Turner failed to identify Mr. Phelps in its initial disclosures

pursuant to FRCP 26(a)(1), to supplement its discovery responses with regard to Mr. Phelps

pursuant to FRCP 26(e), and failed to timely identify Mr. Phelps as a witness in accordance with the

Court's scheduling order and FRCP 16.[12]  Plaintiff notes that "whether 'good cause' exists to modify

a scheduling order depends on four factors: '(1) the explanation for the failure to comply, (2) the

importance of the matters that are the subject of the order, (3) the potential prejudice in allowing the

requested action and (4) the availability of a continuance to cure such prejudice.'"[13]  Plaintiff

elaborates "[t]hese same factors are used to determine whether a party's failure to disclose witnesses

pursuant to Rule 26(a) and (e) should be overlooked as 'harmless or substantially justified;' allowing

those witnesses to testify at trial."[14]

First, Plaintiff  states that Turner's only excuse for its failure to disclose Mr. Phelps identity,

to supplement its discovery responses, or to identify him has an expert prior to the December 3, 2012

deadline imposed by the Court's scheduling order is that Turner was not aware of Mr. Phelps until

---

[11] Rec. Doc. 107.

[12] Rec. Doc. 94-1 at p. 3.

[13] *Id.* at p. 3 (quoting *Wallace v. Chevron U.S.A., Inc.*, No. 09-4202, 2010 WL 5207590 at *1 (E.D. La. 2010) (Wilkinson, Mag. J.)).

[14] *Id.* (quoting *Paulsen v. State Farm Ins. Co.*, No. 06-9546, 2008 WL 449783, at *3 (E.D. La. Feb. 15, 2008)(Africk, J.)).

after the December 3, 2012 deadline.  However, Plaintiff argues that it is "puzzling" how Turner's in-house counsel who represented Turner before the EEOC "overlooked the advocate of [Turner's] own policy," despite in-house counsel and Mr. Phelps working in the same building.[15]  Plaintiff argues that the only explanation for such an oversight–failing to fully and promptly investigate the case–is not a valid excuse for failure to comply with scheduling order deadlines.[16]  Plaintiff further contends that even if Turner did not learn of Mr. Phelps until after December 3, 2012, Turner "allowed the January 7, 2013 discovery deadline to pass without supplementation.  Although Plaintiff recognizes that supplementation is not required if the information has "otherwise been made known to [Plaintiff] during the discovery process,"  Plaintiff argues that the affidavit of Mr. Phelps filed on December 18, 2012 in support of Turner's motion for summary was insufficient to put Plaintiff on notice that Mr. Phelps "unsupported testimony, *alone*, would be used to validate Defendant's policy."[17]

In addition, Plaintiff avers that "[Turner's] failure to timely disclose Phelps and any information he has regarding the 'series of industrial accidents' [leading to the adoption of Turner's policy] deprived Plaintiff of the opportunity to depose Phelps and prejudiced Plaintiff's ability to conduct additional discovery and potentially locate any rebuttal witnesses.[18]  Therefore, Plaintiff contends that Turner's failure to comply with the scheduling order and other discovery rules has prejudiced Plaintiff's ability to impeach Mr. Phelps or rebut his testimony at trial.

Further, Plaintiff maintains that the unfair prejudice to Plaintiff cannot be cured by a

---

[15] Rec. Doc. 94-1 at p. 3.

[16] *Id.* at p. 4.

[17] *Id.* at pp. 4-5 (quoting Fed. R Civ. P. 26(e))(emphasis in original).

[18] *Id.* at pp. 6-7.

continuance of the trial and an opportunity to take the deposition of Mr. Phelps.  First, Plaintiff states

that Federal Rule of Evidence ("FRE") 602 only allows lay witnesses to testify to matters they have

"personal knowledge of," but here, Mr. Phelps lacks personal knowledge of the policy at issue, and

his affidavit, is insufficient to establish his personal knowledge.[19]  Next, Plaintiff argues that "most

of the statement in Phelps' affidavit are inadmissible hearsay" pursuant to FRE 803(3), because Mr.

Phelps cannot offer his statement that "Turner believed the effects of the pain medication contributed

to the [series industrial accidents]" to prove the fact believed.[20]  Finally, Plaintiff contends that Mr.

Phelps, as a lay witness, is prohibited by FRE 701(c) from testifying as to the "cause" of the series

of industrial accidents or Turner's obligations under the Occupational Safety and Health Act

("OSHA").[21]

### 2. *Turner's Opposition*

In opposition to the motion to strike,  Turner disputes Plaintiff's claim that it was obligated

to supplement its discovery responses relating to Mr. Phelps.  Turner argues that the existence of Mr.

Phelps and the nature of his expected testimony was "made known" to Plaintiff through the

affidavits of Mr. Phelps submitted in support  of Turner's motion for summary judgment and in

opposition to Plaintiff's motion for summary judgment.[22]  Therefore, Turner asserts that it was not

required to supplement its discovery responses, because Plaintiff had notice of Mr. Phelps expected

testimony as of December 18, 2012, when motions for summary judgment were filed.

---

[19] *Id.* at p. 7.

[20] *Id.* at p. 8.

[21] *See id.* at pp. 8-9.

[22] Rec. Doc. 102 at p. 5.

Additionally, Turner argues that it had "good cause" for failing to comply with the scheduling order, and further notes that Plaintiff is only interested in precluding Mr. Phelps as a witness because Plaintiff has sought to strike Mr. Phelps and not its Supplemental Witness List.[23] First, Turner explains that, although it was required to file its witness list by December 3, 2012,[24] it did not learn until December 11, 2012 that Michael Phelps, Turner's Corporate Vice President of Health, Safety and Environmental, "played an integral part in the development of and the determination that [Turner's policy was] job-related and justified by business necessity and Turner's obligation to provide a safe work environment for its employees and those of its clients."[25] Turner relies on the affidavit of its counsel, Luke P. LaRocca, to establish that it was not aware that Mr. Phelps had "relevant knowledge regarding the history of the development of the [policy] and the justification for its adoption by Turner as a safety-based standard" until a phone interview with another Turner employee on December 11, 2012.[26]

Second, because Turner's primary defense to this lawsuit is that its policy was a business necessity, Turner argues that the testimony of Mr. Phelps is "crucial to Turner's ability to present evidence regarding the development of the [policy], the relationship between it and the hazardous environments that Turner's employees work in on a daily basis, and the necessity for the [policy]."[27] Specifically, Turner states that Mr. Phelps will testify as to the events leading to the development of the policy, the safety standards considered, and the policy's application to employees in safety-

---

[23] *Id.* at p. 6.

[24] Turner also notes that its witness list filed on December 3, 2012, incorporated "any witness identified or discovered through further investigation and/or discovery." *Id.* at p. 2.

[25] Rec. Doc. 102 at p. 2.

[26] *Id.* at p. 7.

[27] *Id.* at p. 8.

sensitive positions.[28]

Third, Turner argues that Plaintiff would not be prejudiced by permitting Mr. Phelps to testify, especially considering that the continuance of the trial provided Plaintiff with an opportunity to depose Mr. Phelps.[29]   Turner notes that Plaintiff had "knowledge of Mr. Phelps and the information he possesse[d] as of December 18, 2012," when summary judgment motions were filed, and therefore, Plaintiff should not be permitted to argue that he was not given sufficient notice of the witness.[30]   Turner argues that Plaintiff chose not to take any steps to depose Mr. Phelps prior to the discovery deadline or even after a continuance of the trial was granted.[31]   Therefore, Turner contends that Plaintiff would not suffer any prejudice by the late addition to the witness list.[32]

Finally, Turner argues that Mr. Phelps is qualified to testify regarding the matters raised in his affidavits.   Turner contends that Mr. Phelps' affidavits demonstrate that he has "personal historical knowledge" of the relevant policy, because, pursuant to FRE 602, "[e]vidence to prove personal knowledge may consist of the witness's own testimony."[33]   Additionally, Turner explains that Mr. Phelps holds a Bachelor's Degree in Occupational Health and Safety and is certified as a safety Professional by the Board of Certified Safety Professionals, and as a Plant Maintenance Manger by the Association for Facilities Engineers, in addition to being the Corporate Vice President of Health, Safety, and Environmental for Turner.   Therefore, Turner argues that Mr. Phelps' qualifications and personal knowledge of the development and implementation of Turner's

[28] *Id.*

[29] *Id.* at p. 8.

[30] *Id.*

[31] *Id.* at pp. 8-9.

[32] *See id.* at pp. 8-10.

[33] *Id.* at p. 10.

policy makes him an appropriate and critical fact witness to establish Turner's business necessity defense by testifying to the "reasoning and events surrounding the implementation and function of [Turner's policy]."[34]   Finally, Turner argues that it has no intention of introducing Mr. Phelps' affidavits into evidence at trial, and thus, at this time, there is no basis for Plaintiff's hearsay objection.[35]

### 3. *Plaintiff's Reply*

In reply, Plaintiff explains that it seeks to strike only Mr. Phelps because Turner listed Mr. Woods in its initial disclosures and Plaintiff included Mr. Woods on its own witness list, and therefore, cannot claim any prejudice.[36]   With respect to Mr. Phelps, Plaintiff argues that it has suffered prejudice, which cannot be cured by deposition.   Specifically, Plaintiff notes that "[u]nless Phelps was present at each job site, on each day, and personally investigated each incident and administered each subsequent drug screening, he lacks personal knowledge and his statements are inadmissible hearsay."[37]   Moreover, Plaintiff contends that "Phelps' affidavit refers to investigations, drug screenings, reviews of federal safety standards, assessments of Turner's working environments and its client's safety requirements," and Turner has not produced all of these items despite Plaintiff's requests.[38]   In reply, Plaintiff also reiterates the arguments made in support of the pending motion with respect to Mr. Phelps qualifications to testify to the matters raised in his affidavits.[39]

---

[34] *Id.* at p. 11-12.

[35] *Id.* at p. 12-13.

[36] Rec. Doc. 107 at p. 2.

[37] *Id.* at p. 3.

[38] *Id.*

[39] *See id.* at pp. 4-6.

Finally, Plaintiff argues that even if Turner did not discovery Mr. Phelps until December 11, 2011, such excuse does not explain why Turner did not file a supplemental witness list until January 22, 2013.[40]

## B.  Motion and Incorporated Memorandum In Support for Leave to File Supplemental Witness List

In support of the pending motion, Turner explains that it electronically filed its Supplemental Witness List on January 22, 2013, without requesting leave of Court.  However, Turner states that upon examining the Court's scheduling order, Turner realized it must request leave of court to file a witness list after the court-imposed deadline, and proceeded to file the instant motion.[41]

While the proposed untimely witness list also includes the addition of Kyle Woods, Turner provides no reason as to why it did not list Mr. Woods in the witness list filed on December 3, 2013, nor does Turner make any argument as to why "good cause" exists for leave to amend the scheduling order to allow it to include Mr. Woods as a witness.

Although Plaintiff did not file a formal opposition to Turner's *ex parte* motion for leave to file a supplemental witness list, Plaintiff makes arguments in opposition to the instant motion insofar as Plaintiff argues in support of his motion to strike Mr. Phelps that Turner has failed to show good cause for modification of the scheduling order.[42]

---

[40] *Id.* at p. 2.

[41] Turner addresses its arguments in support of the pending motion more fully in its opposition to Plaintiff's motion to strike, which it incorporates by reference in the instant motion.  *See* Rec. Doc. 102.

[42] The Court notes that Plaintiff disregarded Local Rule 7.5, which requires "[e]ach party opposing a motion [to] file and serve a memorandum in opposition to the motion."  However, considering that Turner's Motion and Incorporated Memorandum In Support for Leave to File a Supplemental Witness List was filed as an *ex parte* motion, and Turner "incorporated by reference" its argument in its opposition to Plaintiff's Motion to Strike Michael Phelps, the Court will consider the arguments made in the briefs on the Motion to Strike Michael Phelps.

### III.  Law and Analysis

#### A.  Supplementation of Discovery Responses

FRCP 26 governs discovery in civil matters, and FRCP 26(a) specifically requires parties, without awaiting a discovery request, to provides "initial disclosures" to the other party, which includes the "name and, if known, the address and telephone number of each individual likely to have discoverable information–along with the subjects of that information."  FRCP 26(e) requires these initial disclosures along with any discovery response to be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  However, supplementation is not required if "the additional or corrective information" has "otherwise been made known to the other parties during the discovery process or in writing."[43]  Pursuant to FRCP 37, a party who fails to provide information or identify a witness as required by Rule 26(a) or (e), "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  However, "in performing a Rule 37(c)(1) harmless error analysis" the Court applies the same factors applicable to the Court's analysis of "good cause" for the modification of a scheduling order,[44] as will be discussed below.

#### B.  "Good Cause" for Modification of a Scheduling

Modifications to scheduling orders are governed by Federal Rule of Civil Procedure 16(b), which provides that "[a] schedule may be modified only for good cause and with the judge's

---

[43] Fed. R. Civ. P. 26(e)(1)(A).

[44] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (In "[T]his court looks to four factors:(1) the  importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.")

consent."[45]  Under Fifth Circuit precedent, four factors are relevant in a determination of good cause and whether a district court abuses its discretion in excluding testimony: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony."[46]  A district court has broad discretion in determining how to best preserve the integrity and purpose of its scheduling order.[47] "Moreover, a trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion.[48]

## C.  Analysis

To facilitate Turner's request for leave to file a supplemental witness list, filed on February 19, 2013, this Court would have to find "good cause" and modify its scheduling order, which required Turner to file its witness list by December 3, 2013.[49]  Similarly, to strike the testimony of Michael Phelps, the Court would have to determine that Turner has not demonstrated "good cause" for modification of the scheduling order or that its failure to supplement its discovery was substantially justified or is harmless.  Therefore, the Court must consider Turner's explanation, the prejudice to Plaintiff, the possibility of curing such prejudice by granting a continuance, and the importance of the witnesses' testimony.

---

[45] Fed. R. Civ. P. 16(b).

[46] *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

[47] *Sw. Bell Tel. Co. v. City of El Paso,* 346 F.3d 541 547 (5th Cir. 2003).

[48] *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quoting *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971); Fed R. Civ P. 16(f)).

[49] Scheduling Order, Rec. Doc. 14 at p. 3.

### 1. Explanation for Turner's Noncompliance

Concerning the first factor, the Court is not persuaded by Turner's explanation of why it did not supplement its discovery responses or abide by the Court's scheduling order when filing its witness list.  Turner claims that it was not aware of the need to use Mr. Phelps as a witness until after the deadline to file witness lists.  However, Turner intends for Mr. Phelps to testify relative to its alleged business necessity defense, which it first alleged in its Answer filed on June 25, 2012.[50] As such, Turner knew of its need to obtain a witness in support of its defense before the filing of witness lists.  Additionally, Turner appears to rely solely on the testimony of Mr. Phelps to validate Turner's implementation of the policy as a business necessity.  Thus, Turner must have known of the existence of a vice president of the company that was an "integral part of the development" of the policy prior to December 3, 2012.[51]  Therefore, the Court finds that Turner has not provided a convincing excuse for its failure to timely identify Mr. Phelps as a witness for trial.  As stated above, Turner fails to provide any reason why Mr. Woods was not identified as a witness by the December 3, 2012 deadline, and therefore the Court cannot evaluate the adequacy of Turner's explanation.

### 2. Prejudice to Plaintiff

Concerning the second factor, Plaintiff may incur prejudice from Turner's untimely filing, but the Court notes that the likelihood of such is not particularly high considering that the Court already continued the trial date and Plaintiff could have requested leave to depose Mr. Phelps.  Additionally, Plaintiff has recognized that it is not prejudiced by modification of the scheduling order to allow Mr. Woods to testify, because he was identified in Turner's initial disclosures and he is included on Plaintiff's witness list.

---

[50] Rec. Doc. 11 at p. 9.

[51] Rec. Doc. 102 at p. 2.

### 3. *The Availability of a Continuance to Cure Any Prejudice*

With regard to the third factor, this matter has already been continued,[52] and so, if additional discovery was needed, it could have been requested.  Moreover, the Court is not persuaded by Plaintiff's argument that a deposition would not cure the prejudice to Plaintiff, because Mr. Phelps's testimony is not based on personal knowledge, is outside the appropriate scope of matters a lay witness may testify to, and is inadmissible hearsay.

Although FRE 602 limits the testimony of a fact witness to matters "that the witness has personal knowledge of[,] . . . [e]vidence to prove personal knowledge may consist of the witness's own testimony."  In *First National Bank of Louisville v. Lustig*,[53] the Fifth Circuit held that a witness could testify regarding procedure routinely followed by loan committee even though he was not present at the time the loan was made, because the witness had "adequate knowledge to testify as to the normal practice followed by the loan committee."[54]  Similarly, Mr. Phelps' own affidavit establishes his personal knowledge of the events surrounding the development and implementation of Turner's policy, and Mr. Phelps has "adequate knowledge" to testify as to Turner's understanding of certain events leading to the implementation of its policy.

Plaintiff also argues that Mr. Phelps testimony should be precluded because, under FRE 701(c), a lay witness may not testify to an opinion based on "scientific, technical, or other specialized knowledge."  Mr. Phelps has not been identified as an expert witness, and therefore, may only testify to an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on

---

[52] Rec. Doc. 100.

[53] 96 F.3d 1554, 1582 (5th Cir. 1996).

[54] *Id.* at 1582.

13

scientific, technical, or other specialized knowledge within the scope of Rule 702."[55]  Nonetheless, Mr. Phelps may testify to his personal knowledge surrounding the creation and adoption of Turner's policy.  Therefore, Plaintiff's objection that Mr. Phelps' testimony is outside the appropriate scope for a lay witness is more appropriately raised at trial, if and when the Court hears his testimony.

Finally, Plaintiff argues that Mr. Phelps testimony is inadmissible hearsay under FRE 803(3), which provides that hearsay includes"a statement of memory or belief to prove the fact remembered."  Given that Turner is not introducing the affidavits of Mr. Phelps, but intends to call him as a witness, the Court cannot conclude at this time whether Mr. Phelps' testimony would be hearsay.  Moreover, this issue is more appropriately addressed at trial.

### 4.  Importance of the Witness's Testimony

Finally, the Court acknowledges that Mr. Phelps' testimony is important to Turner's business necessity defense, and therefore weighs in favor of finding good cause.  However, the Court cannot evaluate the importance of Mr. Woods testimony, because Turner has not provided any explanation as to the substance of such testimony.

## V.  Conclusion

While Turner has not provided an adequate excuse for failing to timely list Mr. Phelps as a witness, the Court nonetheless finds good cause exists to allow for amendment of the scheduling order and to allow his testimony at trial, because his testimony is important to Turner's case and will not prejudice Plaintiff.  Further, any argument that Mr. Phelps' testimony is hearsay or is not based on his personal knowledge is premature at this time, and may be more appropriately raised at trial. Regarding the other witness Turner attempted to add on January 22, 2013, Turner provides no reason for its failure to identify Kyle Woods as its witness by December 3, 2012, nor does it provide any

---

[55] Fed. R. Evid. 701.

explanation regarding the significance of his testimony for the Court to evaluate.  Accordingly, considering all of the applicable factors, and the totality of the circumstances, the Court finds good cause to allow the addition of Michael Phelps, but will deny the addition of Kyle Woods by Turner,[56] because no argument for good cause has been made relative to his testimony.  Therefore, the Court will deny Plaintiff's motion to strike Mr. Phelps, and will grant in part and deny in part Turner's motion for leave to file a supplemental witness list.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Michael Phelps[57] is **DENIED**;

**IT IS FURTHER ORDERED** that Turner's Motion and Incorporated Memdorandum in Support for Leave to File Supplemental Witness List[58] is **GRANTED IN PART AND DENIED IN PART**.

**NEW ORLEANS, LOUISIANA**, this 22nd day of May, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[56] The Court is aware that Mr. Woods is listed as a witness for Plaintiff; however, Turner is limited to cross-examination of Mr. Woods should he be called by Plaintiff.

[57] Rec. Doc. 94.

[58] Rec. Doc. 103.