## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HENRY J. HUFFMAN**                                  **CIVIL ACTION**

**VERSUS**                                            **CASE NO. 12-1061**

**TURNER INDUSTRIES GROUP, L.L.C.**                   **SECTION: "G"(2)**

## ORDER AND REASONS

Before the Court is Plaintiff Henry J. Huffman's ("Plaintiff") Motion to Strike and/or Motion *In Limine* to Exclude the Defendant's Expert Witness Michael J. McCabe,[1] wherein he requests that the Court exclude the expert report and testimony of Michael J. McCabe, claiming that the report is irrelevant and unfairly prejudicial. Having considered the motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will grant in part and deny in part the pending motion.

## I.  Background

### A.  *Procedural Background*

Plaintiff filed a complaint in the Eastern District of Louisiana on April 26, 2012 and invoked this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 for alleged violations of the ADA, 42 U.S.C. § 12101 *et seq.*[2] On December 19, 2012, Plaintiff filed the instant Motion to Strike and/or Motion *In Limine* to Exclude the Defendant's Expert Witness Michael J. McCabe,[3] to which

---

[1] Rec. Doc. 39.

[2] Rec. Doc. 1.  An amended complaint was subsequently filed by Plaintiff demanding a jury trial.  Rec. Doc. 17.

[3] Rec. Doc. 39.

Defendant Turner Industries Group, L.L.C. ("Turner") responded on January 4, 2013.[4] Plaintiff filed a reply to the instant motion on January 16, 2013, with leave of court.[5]

**B.   *Factual Background***

In 1986, Plaintiff lost part of his left hand in a welding accident.  The injury has caused Plaintiff chronic pain and related anxiety, which has been treated with hydrocodone, a narcotic pain medication, and Xanax, a benzodiazepine.[6]  In 2007, Turner adopted its Drug, Alcohol, and Contraband Policy (the "policy") in its present form, which prohibits employees from taking certain drugs, including narcotics, benzodiazepines, and muscle relaxers, 8 hours before or during work shifts.[7]

On September 16, 2011, Plaintiff was offered conditional employment by Turner, provided he pass a re-employment physical examination and drug screen.[8]  During the screening process, Plaintiff disclosed to Dan Crook, a physician's assistant contracted by Turner, that he took Xanax and hydrocodone.[9]  Mr. Crook instructed Plaintiff that his use of this medication violated Turner's policy and he would need to obtain a medical release from a physician stating that he could comply with the policy.  Paul Maddox, Turner's Senior Medic, provided Plaintiff three documents to give to his doctor, including the medical release form explaining the policy, a cover letter explaining the release and asking the doctor to conduct an individualized assessment of Plaintiff's ability to perform the essential functions of the job in compliance with the policy, and a copy of Turner's job

---

[4] Rec. Doc. 48.

[5] Rec. Doc. 68.

[6] Rec. Doc. 48 at p. 3.

[7] Rec. Doc. 39-1 at p. 2.

[8] *Id.*; Rec. Doc. 48 at p. 3..

[9] Rec. Doc. 48 at p. 3.

description for welders.[10]

On September 19, 2011, Plaintiff returned the medical release form that his physician, Ken Thomas, M.D., had completed, which stated that Plaintiff "requires pain pills 3-4 times daily."[11] After reviewing the medical release form, Mr. Maddox did not allow Plaintiff to begin working for Turner, because Plaintiff required the medication within eight hours of reporting to work and during work, in violation of Turner's policy.[12]

According to Plaintiff, Turner plans to introduce the testimony and expert report of Michael J. McCabe, a toxicologist, which opines that "Turner's denial of employment to Huffman was reasonable and consistent with independent medical determinations that indicated that his dose regimen of opioid analgesics posed a safety risk."[13]

## II.  Parties' Arguments

### A.  *Plaintiff's Motion* **In Limine**

In support of the pending motion, Plaintiff argues that Mr. McCabe's report should be excluded, pursuant to Federal Rule of Evidence 702, because it seeks to introduce expert testimony that is not "relevant in assisting the trier of fact."[14]  According to Plaintiff, the assessment that Mr. McCabe performed in order to make his determination "is irrelevant since no individualized assessment was [done] by the Defendant *at the moment* the questioned employment decision was made, and a post hoc rationalization [] cannot substitute for the individualized assessment which the

---

[10] *Id.*

[11] *Id.* at pp. 3-4.

[12] Rec. Doc. 39-1 at p. 2.

[13] *Id.* at p. 3.

[14] *Id.* at p. 4.

law requires the employer to make at the time of the employment decision."[15]  Plaintiff avers that,

under the direct threat defense, Turner must show that "*any* quantity or trace of the prohibited

medications would automatically pose a direct threat to health and safety," because Turner's policy

is "one of 'Zero Tolerance.'"[16]  Therefore, Plaintiff reasons that "the amount of medication that is

prescribed is irrelevant."[17]  Similarly, Plaintiff argues that Mr. McCabe's assessment of Plaintiff's

dose regimen is irrelevant and should be excluded, because Turner did not conduct an

"individualized inquiry," based on the quantity or dosage of Plaintiff's medication, of Plaintiff's

ability to perform the job at the time the employment decision was made.[18]

     Additionally, Plaintiff argues that the expert report should be excluded because it is unduly

prejudicial, and Federal Rule of Evidence 403 permits the Court to exclude the expert report and

testimony when the probative value of the evidence is substantially outweighed by its unduly

prejudicial nature.[19]  Plaintiff contends that "McCabe's expert report, with it[s] utilization of the

Plaintiff's medical records, along with the Defendant's discovery requests indicate its desire to

introduce Plaintiff's medical and pharmacy records to attempt to establish or alternatively, suggest

to the jury, that plaintiff is a drug *abuser*."[20]  Plaintiff maintains that Mr. McCabe's report, by

erroneously suggesting that Plaintiff was a drug abuser, will confuse the jury and elicit a verdict

based on emotional response, and therefore should be excluded because "[d]rug abuse is a 'highly

charged public issue' and the damage inherent in such evidence cannot be cured through a limiting

---

[15] *Id.* at p. 3 (emphasis in original).

[16] *Id.* at p. 7 (emphasis in original).

[17] *Id.*

[18] *See id.* at pp. 7-8.

[19] *Id.* at p. 9 (citing *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004 (5th Cir. 1998)).

[20] *Id.* (emphasis in original).

instruction."[21]

Finally, Plaintiff states that the factual basis for an expert's opinion not otherwise admissible cannot be offered as evidence unless "(1) the 'assumptions' are of the type reasonably relied upon by experts, and (2) the probative value of the statements outweighs the potential for prejudice on the jury."[22] According to Plaintiff, Mr. McCabe's report must be excluded because it cites the following excerpt from a July 3, 2012 report of Dr. Ken Thomas, Plaintiff's personal physician: "I can not safely clear him for work and take pain medications 4 times a day. He is not willing to reduce the amount of pain medications prescribed. He has left the office upset and obviously frustrated. He reports 'I will just forget about the job.'"[23] Plaintiff argues that this evidence must be excluded because (1) Mr. McCabe inappropriately editorializes the evidence; (2) it is not the type of evidence reasonably relied on by experts because the report was created nearly ten months after events pertaining to this case; and (3) the probative value is substantially outweighed by the prejudicial nature of the statement.[24]

## B. Turner's Opposition

In opposition to the exclusion of Mr. McCabe's expert report and testimony, Turner disputes Plaintiff's argument that his quantity of medication and resulting cognitive impairment are irrelevant because Turner's policy is one of "Zero Tolerance."[25] Rather than being a "zero-tolerance" policy, Turner argues that the policy "prohibits employees from being at work or reporting for work with any *detectable* quantity of any prohibited drug in the employee's system," which means that "drugs

---

[21] *Id.* at pp. 9-10 (quoting *Jamison v. Storer Broadcasting Co.*, 511 F. Supp. 1286, 1294 (E.D. Mich. 1981)).

[22] *Id.* at p. 11 (quoting Fed. R. Evid. 703).

[23] *Id.* at p. 12.

[24] *Id.* at p. 11-12.

[25] Rec. Doc. 48 at p. 5.

may be present in a persons's body, but [not if] in amounts in excess of the pertinent cut-off level."[26]

Therefore, Turner contends that Mr. McCabe's conclusion that "dose regimens of opioid analgesics are important in determining the safety risks posed by individuals who work in safety-sensitive jobs while under the influence of these prescribed medications" is at the "heart of the '8-hour' rule" adopted by Turner's policy.[27]

Next, Turner states that it is asserting the business necessity defense, and Plaintiff's arguments regarding whether Turner determined that Plaintiff posed a direct threat are inapplicable here.[28]  Turner argues that Mr. McCabe's report is "his professional expert opinion . . . on the issue of whether Turner's drug Policy was justified in light of both 'Turner's obligation to provide a safe workplace for its employees and the available medical and scientific evidence as to the 'known effects of [Plaintiff's] opioid and benzodiazepine drugs on human performance."[29]  Turner specifically notes that Mr. McCabe's report "is not–and never intended to be–a substitute for the individualized assessment required when an employer is attempting to determine under the ADA whether an applicable will pose a direct threat to his own health or safety or the health or safety of others."[30]  Further, Turner contends that the report should not be excluded based on the fact that an "individualized assessment" of the effects of Plaintiff's medication was not done at the time that Plaintiff was not re-hired, because "Plaintiff's own acts and/or omissions prevented its completion" and Fifth Circuit precedent does not require an individualized assessment if an applicant is

---

[26] *Id.* (internal quotations omitted)(emphasis in original).

[27] *Id.* (internal quotations omitted).

[28] *Id.* at p. 6.

[29] *Id.* at p. 8.

[30] *Id.*

disqualified based on a safety-related standard justified under the business necessity defense.[31]

Turner also disputes Plaintiff's contention that the evidence presented by Mr. McCabe's report is irrelevant, prejudicial, and is merely an attempt to portray Plaintiff as a drug abuser.  Turner argues that the report and the evidence it relies on are relevant to "whether Plaintiff was able to perform the essential functions of a welder because of the medications . . . he was required to take."[32] Turner argues that Plaintiff has "placed his medical history in question–specifically the medical necessity of his prescription medication," and therefore Turner should be permitted to present evidence relevant to those claims.[33]  Moreover, Turner argues that the evidence is critical for "impeachment, cross-examination, and assessing the credibility of Plaintiff himself."[34]  Specifically, Turner states that "Dr. McCabe's report and the medical and prescription records on which it is based, along with Plaintiff's and Dr. Thomas's deposition testimony, establish that Plaintiff was dishonest and provided false information–to his health care providers and to Turner through Mr. Crook–about the prescription medications he was taking."[35]  Turner avers that the relevance and importance of this testimony to Turner's defense and the issue of Plaintiff's credibility "cannot be overstated."[36]

## C.  Plaintiff's Reply

In reply, Plaintiff reiterates many of the arguments made in the memorandum in support of

---

[31] *Id.* at pp. 7-8.

[32] *Id.* at p. 15.

[33] *Id.*

[34] *Id.*; *see also id.* at pp. 17-23.

[35] *Id.* at p. 22.

[36] *Id.* at pp. 22-23.

the pending motion.[37] Plaintiff also incorporates by reference and restates arguments made in opposition to Turner's Motion for Summary Judgment relating to Turner's obligation to prove that Plaintiff posed a "direct threat," which this Court considered and rejected in its Order and Reasons denying summary judgment.[38]  Therefore, the arguments warrant no further consideration here.

### III.  Law and Analysis

#### A.  Applicable Law

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides that an expert witness may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[39] the United States Supreme Court instructed that "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules."[40]

The pending motion seeks the exclusion of Mr. McCabe's testimony and expert report on the basis that it is both irrelevant and prejudicial  pursuant to Federal Rules of Evidence 401, 402, and 403.  Rule 401 states:

> Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

---

[37] *See* Rec. Doc. 68 at pp. 2-5, 6-9.

[38] *See* Order & Reasons, Rec. Doc. 122; Plaintiff's Reply, Rec. Doc. 68 at pp. 1-2, 5-6.

[39] 509 U.S. 579.

[40] *Id.* at 595.

(b) the fact is of consequence in determining the action.

Rule 402 states that irrelevant evidence is inadmissible. Federal Rule of Evidence 403 states that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Additionally, the pending motions seeks the exclusion of Mr. McCabe's report and testimony under Rule 703 based upon evidence that Mr. McCabe relies upon in his report. Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

A district court's ruling on evidentiary issues is reviewed by a court of appeals for an abuse of discretion.[41] When "the district court has conducted, on the record, a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are [wary] about finding an abuse of discretion."[42] A district court is accorded wide discretion in determining the relevance and admissibility of evidence under Rules 401 and 402.[43] In addition, "[a] trial court's ruling on admissibility under Rule 403's balancing test will not be overturned on appeal absent a clear abuse of discretion."[44]

---

[41] *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).

[42] *Id.*

[43] *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

[44] *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1153 (5th Cir. Unit A Sept. 1981) (internal citations omitted).

## C. Analysis

As an initial matter, that Court notes that Rule 703 permits Mr. McCabe to base his opinion on facts or data that would otherwise be inadmissible, provided they are of the type reasonable relied upon by experts in that field.[45]   However, the inadmissible facts and data on which the opinion is based may only be disclosed to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."[46] Mr. McCabe's report makes the following three "findings":

1.   Common side effects associated with opioid (narcotic analgesics) use include effects on human behavior and performance that serve as the scientific basis informing curtailment of activities such as performance of safety sensitive job functions while using such medications.
2.   Turner's [policy] . . . is based on credible medical and scientific studies that establish that the use of opioid analgesics . . . have side effects that increase the risk of occupational incidents and injuries.
3.   Turner's denial of employment to Huffman was reasonable and consistent with independent medical determinations that indicated that his does regimen of opiod analgesics posed a safety risk.[47]

Mr. McCabe bases his conclusions on, among other things, medical records from The Baton Rouge Clinic, AMC (Dr. Wharton), Occupational and Industrial Healthcare, LLC (Dr. Butler); The Cypress Clinic (Dr. Thomas); Lake Area Family Medicine (Dr. Yvette Degazon); Clark A. Gunderson, M.D.; and Speight Family Medical, LLC.

Plaintiff argues that the Court should exclude Mr. McCabe's report as irrelevant under Rules 401 and 402, because his conclusions are based on an individualized assessment of whether Plaintiff constitutes a direct threat to the health and safety of others, which was not conducted by Turner at the time of its decision not to hire Plaintiff.  This Court has previously considered and rejected

---

[45] Fed. R. Evid. 703.

[46] *Id.*

[47] Rec. Doc. 48-1 at p. 10.

Plaintiff's arguments that Turner must prove that Plaintiff constituted a direct threat.[48]  In this Court's recent order denying Turner's motion for summary judgment, the Court stated that under *Atkins v. Salazar*,[49] a defendant must prove by a preponderance of the evidence that such standards are "(1) uniformly applied; (2) job-related for the position in question; (3) consistent with business necessity; and (4) cannot be met by a person with plaintiff's disability even with a reasonable accommodation."[50] Accordingly, the first two conclusions presented in Mr. McCabe's expert report relating to the side effects experienced by people taking narcotic medications and the credibility of the medical and scientific evidence underpinning Turner's policy are relevant to establishing Turner's business necessity defense.

However, the third conclusion reached in Mr. McCabe's expert report relating to the effects of Plaintiff's specific dose regimen of medication is not relevant, because it does not have "any tendency" to prove a fact "of consequence" to Turner's business necessity defense.[51]  Turner has stated throughout this litigation that it never made any determination that Plaintiff posed a direct threat, nor did it conduct an individualized determination of Plaintiff's abilities at the time of its employment decision.   In fact, the business necessity defense does not require it to do so. Furthermore, at no time has Turner alleged that Plaintiff was denied employment because of his specific dosage of medication.   Accordingly, Mr. McCabe's opinion regarding the effects of Plaintiff's specific dose regimen is irrelevant to any fact of consequence in this litigation.

Plaintiff has also argued that Mr. McCabe's testimony should be excluded pursuant to

---

[48] *See* Order & Reasons, Rec. Doc. 122.

[49] 677 F.3d 667 (5th Cir. 2011).

[50] Order & Reasons, Rec. Doc. 122 at p. 27 (citing *Atkins*, 677 F.3d at 681-82).

[51] *See* Fed. R. Evid. 401.

Federal Rule of Evidence 403 because it suggests to the jury that Plaintiff is a drug abuser. While the Court has already determined that portions of Mr. McCabe's expert report reflects relevant opinion evidence, under Rule 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." As Mr. McCabe's testimony as to his first two conclusions, regarding the common side effects of opioid analgesics and the medical and scientific basis for Turner's policy, directly relate to Turner's business necessity defense, the Court finds that the probative value of these conclusions outweighs their potential prejudice, if any.

However, admission of Mr. McCabe's expert opinion, at least as to his first two conclusions, does not require the Court to admit the otherwise inadmissible facts and data relied upon in forming his opinion. The Court has previously determined that Plaintiff's medical and pharmacy records should be excluded because they are irrelevant and their probative value is substantially outweighed by the potential prejudice to Plaintiff; Turner has never argued that Plaintiff was declined employment because of his specific dosage, but rather because he needed to take certain medications within eight hours of  and during his shifts, in violation of Turner's policy.[52]  Therefore, Mr. McCabe's reliance on facts and data obtained through Plaintiff's medical and pharmacy records may not be disclosed to the jury while testifying as to his opinions regarding Turner's policy.

---

[52] *See* Order & Reasons, Rec. Doc. 128.

### V.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion *In Limine*[53] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the medical records relied upon by Michael McCabe in forming his opinions shall not be disclosed to the jury;

**IT IS FURTHER ORDERED** that Michael McCabe may testify as to his opinions regarding the common side effects of opioid analgesics and the medical and scientific basis of Turner's policy; however, he shall not testify regarding his third conclusion that "Turner's denial of employment to Huffman was reasonable and consistent with independent medical determinations that indicated that his does regimen of opiod analgesics posed a safety risk."[54]

**NEW ORLEANS, LOUISIANA**, this <u>23rd</u> day of May, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[53] Rec. Doc. 31.

[54] Rec. Doc. 48-1 at p. 10.