## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HENRY J. HUFFMAN**                          **CIVIL ACTION**

**VERSUS**                                    **CASE NO. 12-1061**

**TURNER INDUSTRIES GROUP, L.L.C.**           **SECTION: "G"(2)**

## ORDER AND REASONS

Before the Court is Defendant Turner Industries Group, LLC's ("Turner") "Motion in Limine to Exclude the Introduction or Any Reference to the Merck Medical Study Entitled 'The Efficacy of Rofecoxib 50mg and Hydrocodone/Acetaminophen 7.5/750mg in Patients with Postoperative Arthroscopic Pain,'"[1] wherein Turner seeks the exclusion of this study on the basis that Plaintiff cannot authenticate it, Plaintiff's expert did not rely upon the study in forming his opinion, and so Plaintiff's expert cannot disclose it to the jury, and that its potential for prejudice substantially outweighs its probative value. After considering the motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will grant the pending motion.

## I. Parties' Arguments

In support of the pending motion, Turner argues that the Merck Medical Study ("the study") should be excluded pursuant to Federal Rule of Evidence 403 because "any probative value that it may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury."[2] Turner claims that Plaintiff has incorrectly represented that the study was a clinical study of the dose effects of hydrocodone, "the narcotic pain medication that Plaintiff admits

---

[1] Rec. Doc. 118.

[2] Rec. Doc. 118-1 at p. 3.

he has taken three or four times a day since 1989."[3] Turner also contends that Plaintiff has inaccurately stated that the study concludes that only 1.4% of persons actually experience dizziness as a result of taking hydrocodone.[4]

However, Turner avers that the study itself states that its purpose was "'to compare the efficacy and tolerability of rofecoxib, hydrocodone/acetaminophen 7.5 mg/750 mg and placebo in treating pain after arthroscopy of the knee.'"[5] Turner refutes that the study was designed or carried out for the purposes of studying the effects of hydrocodone, and therefore argues that "[i]f Plaintiff's own attorneys have misconstrued the [s]tudy's clearly worded statement of its purpose, there is a strong probability that if it is admitted into evidence, the jury will do the same."[6]

Further, Turner argues that the study is inapplicable to Plaintiff's case, because the persons selected to participate in the study had a very different medical history from that of Plaintiff.[7] Turner contends that the members of the test group in the study had recently undergone arthroscopic knee surgery and the study sought to measure and compare the effectiveness of Rofecoxib and hydrocodone in relieving pain associated with that specific procedure; in contrast, Plaintiff's pain is derived from a partial amputation of his left hand in 1986, and the numerous surgeries to reconstruct his hand that followed.[8] Moreover, Turner argues that the study specifically excluded people like

---

[3] *Id.*

[4] *Id.* at pp. 3-4.

[5] *Id.* at p. 4. (citing Rec Doc. 46-1 at p. 195 (the study)).

[6] *Id.*

[7] *Id.*

[8] *Id.*

Plaintiff who had a "'current medical history of chronic pain requiring treatment with analgesics.'"[9] Moreover, Turner alleges that the study also excluded those who were taking muscle relaxants, but that Plaintiff has admitted that he was prescribed Soma, a muscle relaxant, for pain before and after his March 2011 cervical surgery.[10] As such, Turner argues that Plaintiff would not have been allowed to participate in the study, and therefore it has no relevance to this case.[11]

In addition, Turner maintains that the introduction or any reference to the study should be excluded pursuant to Federal Rule of Evidence 602, which is "subject to Rule 703," because Plaintiff does not have a witness who could authenticate the study.[12] While Turner acknowledges that Federal Rule of Evidence 703 allows experts to testify about opinions or inferences that are drawn from data and facts they relied on in forming their opinion, even if those facts or data are inadmissible, Turner argues that Plaintiff has not listed a witness who has personal knowledge of the study or any witness who could authenticate it.[13] Specifically, Turner contends that Plaintiff's drug expert, Dr. Charles Billings, "cannot testify regarding the study because he did not rely upon it in reaching his conclusions but was merely aware of its existence."[14]

In opposition, Plaintiff argues that the study is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading

---

[9] *Id.* at p. 5 (quoting Rec. Doc. 46-1 at p. 197).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at pp.5-6.

the jury.[15] Plaintiff contends that Turner's policy imposed a "qualification standard" that Plaintiff could not comply with due to the medications he was required to take by his treating physician; however, the Americans with Disabilities Act requires an employer to show its qualification standards are "'job related and consistent with business necessity.'"[16] Further, to satisfy the "business necessity defense" an employer must prove by a preponderance of the evidence that the policy is "(1) uniformly applied; (2) job-related for the position in question; (3) consistent with business necessity; and (4) cannot be met by a person with plaintiff's disability even with a reasonable accommodation."[17] Plaintiff argues that a qualification standard like Turner's policy is consistent with business necessity only if "after considering 'the magnitude of possible harm as well as the probability of occurrence ... [the standard] substantially promotes the business' needs.'"[18] As such, Plaintiff concludes that:

> [h]ad Defendant conducted any research into the actual or *probable* effects of these types of medicines—specifically Hydrocodone—it would have found that only in the rarest of cases do individuals taking legally prescribed Hydrocodone experience, adversely, the side effects caused by, as Defendant refers to it, this 'potent' drug.[19]

Plaintiff argues that the study determined that there were no significant differences between the hydrocodone and placebo patients regarding the rates of nausea, vomiting, and dizziness.[20] Plaintiff claims that these results are "completely at odds with the grand declarations made by [Turner]" that all the medications listed under the policy caused deleterious side effects at such a rate

---

[15] Rec. Doc. 133 at p. 2.

[16] *Id.* (quoting 42 U.S.C. § 12113(a)).

[17] *Id.* (citing *Atkins v. Salazar*, 677 F.3d 667. 681 (5th Cir. 2011)).

[18] *Id.* (citing *Atkins*, 677 F.3d at 682) (alterations in original).

[19] *Id.* (emphasis in original).

[20] *Id.* at p. 3 (citing Rec. Doc. 43-1 at p. 202).

4

that the magnitude of the risk to safety posed by employees using these medications necessitated the policy adopted by Turner.[21] Therefore, Plaintiff argues that the study is "highly relevant to this case as it helps to establish that the probability of harm of taking these medications is very low even when taken for a short period of time."[22]

Plaintiff acknowledges that his medical history is different from that of the subjects in the study. However, Plaintiff avers that:

> the purpose of the Plaintiff's use of this study is to rebut the Defendant's blanket assertion and unfounded generalization that anyone taking these medications presents a safety risk. It was never the intention of the Plaintiff to compare the results of the study with the facts of this case but instead to establish that the possibility of harm as a result of taking these medications is very low even when taken for a short period of time, which according to Dr. Billings' testimony is when the negative side effects of these medications would be most prevalent. This is especially true considering Dr. Billings' expert report which states that the extended periods of time that Mr. Huffman has been on these medications is sufficient time for any problematic side effects to surface and also to have subsided even if initially present.[23]

Finally, Plaintiff claims that Dr. Billings will "testify at trial regarding the overall purpose and result of the Merck Study as part of his expert opinion."[24] Further, Plaintiff states that Dr. Billings will testify concerning the efficacy and tolerability of Refecoxib compared to Hydrocodone and a placebo. Plaintiff maintains that the study supports Dr. Billings' expert opinions.[25]

---

[21] *Id.* at pp. 3-4.

[22] *Id.* at p. 4.

[23] *Id.* (internal citations omitted).

[24] *Id.* at p. 5.

[25] *Id.*

## II. Law and Analysis

The pending motion seeks the exclusion of the study, claiming that the Plaintiff has no witness who can authenticate the study, Plaintiff's expert has no personal knowledge of the study, the study is irrelevant, and that the potential prejudice of the study substantially outweighs its probative value. While Turner challenges the authenticity of the study, pursuant to Federal Rule of Evidence 902(6), newspapers and periodicals, or printed materials purporting to be a newspaper or periodical, are self-authenticating. The study is an article from a medical research periodical.[26] As such, the study meets the initial threshold requirement of authenticity for admissibility.

Turner has also argued that Dr. Billings, Plaintiff's expert, may not testify regarding the study because he has no personal knowledge of it, in violation of Rule 602. Rule 602 states:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

However, Rule 703 allows experts to testify to matters they do not have personal knowledge of in certain circumstances:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

While the parties have not briefed this issue, on its face the study appears to be inadmissible hearsay, and therefore not admissible on its own. As such, the study could only be disclosed to the

---

[26] *See* Rec. Doc. 46-1 (the study).

jury if "experts in the particular field would reasonably rely on these kinds of facts or data in forming an opinion on the subject" and if the study's "probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." Moreover, for the study to aid the jury in evaluating Dr. Billings's opinion, he would have had to rely on the study in forming his opinion. Turner claims that Dr. Billings did not rely on the study in forming his opinion and Plaintiff has not refuted this, nor has Plaintiff come forward with evidence that the study is something experts in this field would reasonably rely upon in forming an opinion on the subject. Therefore, based on the information this Court has, it does not appear that Plaintiff's expert, Dr. Billings, can disclose the study to the jury. Even if Dr. Billings did rely upon the study, and Plaintiff could show that "experts in the particular field would reasonably rely on these kinds of facts or data in forming an opinion on the subject," this Court must find that the study's "probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect," which is substantially the same test pursuant to Rule 403.

Turner has also argued that the study should also be excluded under Rule 403, because its potential for prejudice substantially outweighs its probative value. Federal Rule of Evidence 403 states that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

A district court's ruling on evidentiary issues is reviewed by a court of appeals for an abuse of discretion.[27] When "the district court has conducted, on the record, a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are [wary] about finding an abuse of

---

[27] *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).

discretion."[28] "A trial court's ruling on admissibility under Rule 403's balancing test will not be overturned on appeal absent a clear abuse of discretion."[29]

Here, the Court finds that without a witness who has personal knowledge of the study, the study's probative value is substantially outweighed by a danger of prejudice. Without a witness who can testify to the propriety of the study and how it was conducted, Turner has no way of challenging the applicability of the facts to this case, or the conclusions and opinions within the study. Without this opportunity, the jury may be misled to accept wholesale the conclusions of the study, simply by the fact that Turner was denied an opportunity to challenge its findings or scientific methodology. Therefore, the Court finds that any relevance or probative value is substantially outweighed by the danger its danger of prejudice.

### III. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Turner's "Motion in Limine to Exclude the Introduction or Any Reference to the Merck Medical Study Entitled 'The Efficacy of Rofecoxib 50mg and Hydrocodone/Acetaminophen 7.5/750mg in Patients with Postoperative Arthroscopic Pain'"[30] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this  24th  day of May, 2013

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[28] *Id.*

[29] *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1153 (5th Cir. Unit A Sept. 1981) (internal citations omitted).

[30] Rec. Doc. 118.

8